IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMSC-021

Filing Date: May 12, 2011

Docket No. 32,137

STATE OF NEW MEXICO,

 Plaintiff-Petitioner,

v.

CLINTON SKIPPINGS,

 Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Don Maddox, District Judge

Gary K. King, Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Petitioner

Susan Roth, Assistant Appellate Defender
Santa Fe, NM

for Respondent

OPINION

CHÁVEZ, Justice.

{1} In this case, we consider whether Defendant's requested involuntary manslaughter instruction was properly denied by the district court. First, we evaluate the State's claim that insufficient evidence was adduced at trial to support giving the instruction. Second, finding that the evidence was sufficient, we proceed to analyze whether Defendant's theory that the killing was accidental precludes giving the instruction. Because these two theories of the killing implicate inconsistent mental states, the State contends that it would have been improper for the district court to furnish the involuntary manslaughter instruction.

1

**{2}** We conclude that where there is sufficient evidence of both criminal negligence and accident, it is proper to grant an involuntary manslaughter instruction. We also reject the State's contention that Defendant failed to preserve the instruction issue at trial, finding that the district court was abundantly alerted to Defendant's desired instruction and his underlying argument. Accordingly, we affirm the Court of Appeals, which found that the district court improperly denied the instruction. *State v. Skippings*, No. 28,324, slip op. at 2 (N.M. Ct. App. Nov. 25, 2009).

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY

**{3}** Defendant was convicted in a jury trial of voluntary manslaughter, contrary to NMSA 1978, Section 30-2-3(A) (1994). Defendant's conviction arose from a series of interactions with Christy Rogers (Victim) that ultimately culminated in her death. We recount only the facts relevant to the issues before us. Additional facts are incorporated into the body of the Opinion where appropriate.

**{4}** According to Defendant's testimony, Defendant and Victim had been involved in a long-term romantic relationship that included extended periods of cohabitation prior to Victim's death on March 7, 2007. On March 5, 2007, Victim had been released from jail after being incarcerated for a little more than a month for drug-related offenses. Defendant testified that upon her release, Victim and Defendant reunited, spending the night of March 5 together in a Hobbs motel. The next day, Defendant took Victim shopping to purchase new clothes and cosmetics, and the two discussed Victim abstaining from future drug use. That evening, Defendant dropped Victim off at her father's home to spend the night.

**{5}** On March 7, Defendant suspected that Victim was visiting Dunn Street, an area in Hobbs associated with the illicit drug trade. According to his testimony, he twice returned to that area that day and found Victim present. On the second occasion, upon observing Victim, Defendant believed that Victim had been "getting high." Defendant confronted Victim and insisted that she return with him to her father's residence.

**{6}** Victim apparently resisted his overtures and the two engaged in a loud argument that spilled into the street and quickly escalated into a physical confrontation. One witness characterized the two as "fighting, hitting each other." At one point, Victim and Defendant became entangled, with Victim straddling Defendant. Defendant sought to extricate himself from Victim and forced her off of him, resulting in her landing on the asphalt roadway and cracking her skull. Defendant summoned assistance from a bystander and transported Victim to a hospital, where she died from her injuries.

**{7}** At Defendant's trial, the jury was instructed regarding second degree murder and voluntary manslaughter. The district court denied Defendant's requested involuntary manslaughter instruction. The jury returned a conviction on the voluntary manslaughter charge.

**{8}**     On appeal, the Court of Appeals concluded that the involuntary manslaughter instruction was improperly denied, prompting reversal of the district court. *Skippings*, No. 28,324, slip op. at 2. The Court found that there was sufficient evidence adduced at trial for the jury to conclude that Defendant's deadly altercation with Victim was the result of a misdemeanor battery. *Id.* at 4. The Court explained that this view of the evidence constitutes "unlawful act" involuntary manslaughter under Section 30-2-3(B) ("[i]nvoluntary manslaughter consists of manslaughter committed in the commission of an unlawful act not amounting to felony"). *Skippings*, No. 28,324, slip op. at 4. Because a defendant is entitled to an "instruction on a lesser-included offense, [when] there [is] evidence tending to establish the lesser offense," the Court concluded that Defendant was entitled to the involuntary manslaughter instruction. *Id*. at 3-4 (internal quotation marks and citation omitted). In addition, the Court also dispensed with the State's preservation arguments, concluding that Defendant had properly "alert[ed] the court's mind to the argument being made [to] invoke a ruling." *Id*. at 7.

**{9}**     We granted certiorari to consider whether Defendant was entitled to the involuntary manslaughter instruction. We conclude that the instruction should have been granted, and accordingly affirm the Court of Appeals.

## II.     THE INVOLUNTARY MANSLAUGHTER INSTRUCTION

### A.     Standard of Review

**{10}**     The propriety of jury instructions denied or given involves mixed questions of law and fact that we review de novo. *State v. Lucero*, 2010-NMSC-011, ¶ 11, 147 N.M. 747, 228 P.3d 1167. "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instruction[s]." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (internal quotation marks and citation omitted). "A defendant is entitled to an instruction on his or her theory of the case if evidence has been presented that is sufficient to allow reasonable minds to differ as to all elements of the offense." *Id*. (internal quotation marks and citation omitted); *see also State v. Rudolfo*, 2008-NMSC-036, ¶ 27, 144 N.M. 305, 187 P.3d 170 (clarifying that an instruction should be given when there is "evidence sufficient to justify a reasonable jury determination as to whatever element is under consideration" (internal quotation marks and citation omitted)). In addition, to obtain an instruction on a lesser included offense, "[t]here must be some view of the evidence pursuant to which the lesser offense is the highest degree of crime committed, and that view must be reasonable." *State v. Brown*, 1998-NMSC-037, ¶ 12, 126 N.M. 338, 969 P.2d 313 (internal quotation marks and citation omitted). Therefore, if "a jury rationally could acquit on the greater offense and convict on the lesser," the defendant is entitled to the instruction. *State v. Ramirez*, 2008-NMCA-165, ¶ 5, 145 N.M. 367, 198 P.3d 866 (internal quotation marks and citation omitted).

### B.     Involuntary Manslaughter in New Mexico

**{11}** Under New Mexico law, involuntary manslaughter is an unintentional killing, *State v. Henley*, 2010-NMSC-039, ¶ 14, 148 N.M. 359, 237 P.3d 103, that consists of an "unlawful killing of a human being without malice . . . committed in the commission of an unlawful act not amounting to felony, or in the commission of a lawful act which might produce death in an unlawful manner or without due caution and circumspection." Section 30-2-3. We have interpreted this statutory scheme to encompass unintentional killings that result due to "1) the commission of an unlawful act not amounting to a felony [that causes death]; 2) the commission of a lawful act that might produce death, in an unlawful manner; or 3) the commission of a lawful act that might produce death without due caution and circumspection." *Henley*, 2010-NMSC-039, ¶ 14 (internal quotation marks and citations omitted).

1. **Sufficient evidence was presented at trial to allow reasonable minds to differ regarding whether Defendant committed misdemeanor battery against Victim, a crime that constitutes an unlawful act not amounting to a felony under Section 30-2-3(B).**

**{12}** At trial, Defendant presented an involuntary manslaughter instruction embodying the theory that Victim's death resulted from Defendant's "commission of an unlawful act not amounting to a felony," *Henley*, 2010-NMSC-039, ¶ 14 (internal quotation marks and citations omitted), namely, that Defendant committed the non-felonious "unlawful act" of misdemeanor battery during the scuffle with Victim that immediately preceded her death, *id*. ¶ 21. In these proceedings, the Court of Appeals concluded that the jury could have reasonably found that Defendant's actions during the scuffle satisfied the "unlawful act" category under Section 30-2-3(B). *Skippings*, No. 28,324, slip op. at 4. The State contends that the Court of Appeals erred because the alleged battery resulted in Victim's death, and therefore constitutes aggravated battery, a felony which cannot properly predicate involuntary manslaughter.

**{13}** Any misdemeanor requiring a showing of at least criminal negligence, including simple battery, can serve as the predicate unlawful act for involuntary manslaughter. *See State v. Yarborough*, 1996-NMSC-068, ¶ 20, 122 N.M. 596, 930 P.2d 131; *see also State v. Holden*, 85 N.M. 397, 400, 512 P.2d 970, 973 (Ct. App. 1973) ("Inflicting a beating is an unlawful act."). Our Legislature has defined battery as "the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner." NMSA 1978, § 30-3-4 (1963). In contrast, aggravated battery is a felony defined as follows:

> A. Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another.

> B. Whoever commits aggravated battery, inflicting an injury to the person which is not likely to cause death or great bodily harm, but does cause

4

painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a misdemeanor.

C. Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony.

NMSA 1978, § 30-3-5 (1969).

**{14}** A key distinction between the two battery statutes is the mens rea requirement. *State v. Gammill*, 102 N.M. 652, 656, 699 P.2d 125, 129 (Ct. App. 1985). Under the aggravated battery statute, it must be established that the perpetrator possessed the specific "intent to injure that person or another." *See also* § 30-3-5(A); *State v. Wynn*, 2001-NMCA-020, ¶ 4, 130 N.M. 381, 24 P.3d 816 ("Aggravated battery is a specific intent crime."). In contrast, the simple battery statute only requires that the perpetrator possess general criminal intent to touch or apply force "to the person of another, when done in a rude, insolent or angry manner." Section 30-3-4; *State v. Nozie*, 2007-NMCA-131, ¶ 12, 142 N.M. 626, 168 P.3d 756, *aff'd*, 2009-NMSC-018, 146 N.M. 142, 207 P.3d 1119 (noting that "general criminal intent" is the mental state necessary to establish battery). Therefore, absent the specific intent to injure, a defendant cannot be convicted of aggravated battery.

**{15}** In these proceedings, reasonable minds can differ regarding whether Defendant's actions during the scuffle with Victim constitute simple battery. At trial, witness testimony was presented supporting the conclusion that Defendant intentionally applied force to Victim in a "rude, insolent or angry manner." Defendant himself conceded that he and Victim engaged in a verbal dispute that escalated into a physical altercation, he was "mad," and he ultimately pushed her "real hard." However, Defendant also testified that he lacked the intent to injure Victim, asserting that he "didn't mean to hurt her in any kind of way" and that he "wasn't thinking" when he pushed Victim. Two additional witnesses also testified to witnessing the scuffle between Defendant and Victim. One contended that he saw Defendant "lifting [Victim] and throwing her back to the ground." The second testified that Defendant was mad, the two were "fighting with each other, and . . . she was on him . . . [and] he threw her down and fell." The second witness also testified that Victim jumped on Defendant and she hit the ground due to his efforts to "get her off" him.

**{16}** The testimony of the two eyewitnesses, coupled with Defendant's explanation of the fatal confrontation with Victim, were adequate to enable "reasonable minds to differ" regarding whether Defendant committed simple battery versus aggravated battery. In particular, Defendant's testimony provided evidence that he lacked the "intent to injure" Victim, a statutory element of aggravated battery. Section 30-3-5(A). Although the State presents a view of the evidence that supports its theory of an aggravated battery, the testimony of Defendant and the eyewitnesses lends sufficient evidentiary support to Defendant's theory of a simple battery. Such competing strands of evidence are for the jury to consider and resolve. *State v. Gallegos*, 2001-NMCA-021, ¶ 15, 130 N.M. 221, 22 P.3d

689; *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057. Only if we were to conclude that Defendant's actions constituted aggravated battery as a matter of law could we foreclose Defendant's theory that he committed simple battery. *See State v. Allen*, 2000-NMSC-002, ¶ 88, 128 N.M. 482, 994 P.2d 728. Merely because Defendant engaged in a scuffle with Victim that possibly escalated into a physical fight of some sort does not preclude a finding of simple battery. *See State v. Hill*, 2001-NMCA-094, ¶¶ 18-19, 131 N.M. 195, 34 P.3d 139 (in applying analogous battery against a peace officer statute, court concluded that a "possible view[] of the evidence" was that defendant who struck and kicked officer committed an "intentional touching or application of force in a rude, insolent, or angry manner" (internal quotation marks and citation omitted)); *see also State v. Seal*, 76 N.M. 461, 463, 415 P.2d 845, 846 (1966) (court found ample evidence for a battery conviction where the defendant "grabbed his wife, pushed or slammed her against a parked car, held her there, then after she broke away, followed her to [another] car where he proceeded to talk to her for at least an hour, while she cried and screamed for him to let her go" (internal quotation marks omitted)). Because there is sufficient evidence to support Defendant's theory, we conclude that sufficient evidence of an "unlawful act not amounting to [a] felony" is present to support an involuntary manslaughter instruction. Section 30-2-3(B).

2.     **Reasonable minds could differ regarding whether Defendant (1) acted with willful disregard for Victim's safety and (2) was subjectively aware of the danger or risk his actions posed to Victim, so he thereby acted with criminal negligence.**

**{17}**     The State argues that the evidence adduced at trial "reveals no act ascribed to Defendant that would allow any rational jury to conclude that the most culpable *mens rea* Defendant possessed was criminal negligence." According to the State, the evidence supports only two conclusions regarding Defendant's mental state: (1) that Defendant killed Victim intentionally, or (2) that Victim's death was an accident. As the State points out, neither of these conclusions comports with a mind-set of criminal negligence. However, our review indicates that sufficient evidence was presented to the jury to allow reasonable minds to differ regarding whether Defendant possessed the required criminal negligence to support giving an involuntary manslaughter instruction.

**{18}**     In New Mexico, "the State must show at least criminal negligence to convict a criminal defendant of involuntary manslaughter." *Yarborough*, 1996-NMSC-068, ¶ 20. Because involuntary manslaughter is an unintentional killing, we only attach felony liability where the actor has behaved with the requisite mens rea. *Id.* ¶¶ 19-20. This Court has made clear that the criminal negligence standard applies to all three categories of involuntary manslaughter. *State v. Salazar*, 1997-NMSC-044, ¶ 54, 123 N.M. 778, 945 P.2d 996 ("[I]nvoluntary manslaughter, whether premised upon a lawful or unlawful act, requires a showing of criminal negligence."). Criminal negligence exists where the defendant "act[s] with willful disregard of the rights or safety of others and in a manner which endanger[s] any person or property." *Henley*, 2010-NMSC-039, ¶ 16 (internal quotation marks and citation

6

omitted); UJI 14-133 NMRA. We also require that the defendant must possess subjective knowledge "of the danger or risk to others posed by his or her actions." *Henley*, 2010-NMSC-039, ¶ 17.

**{19}**   Reasonable minds could differ regarding whether Defendant's scuffle with Victim was a criminally negligent act. As we have discussed, Defendant and Victim engaged in a verbal quarrel that escalated into a physical confrontation in which Defendant's actions caused Victim's fall and subsequent death. Ample evidence was provided to support the view that Defendant engaged in the dispute and behaved in a fashion that exposed Victim to danger without intending her death. Based on this evidence, the jury could reasonably have concluded that Defendant demonstrated a willful disregard of Victim's safety. In addition, Defendant's subjective knowledge of the danger posed by his conduct could be inferred by a rational jury from the evidence presented. *See State v. McCrary*, 100 N.M. 671, 673-74, 675 P.2d 120, 122-23 (1984). Even though Defendant contended at trial that he was unaware of the danger posed by his actions, a jury could infer from the circumstances that Defendant possessed the required subjective knowledge. As the State suggested at trial, a jury could conclude that Defendant was aware "of the danger or risk to others posed by his . . . actions" when he caused Victim to fall on the hard asphalt, a commonly understood peril. *See Henley*, 2010-NMSC-039, ¶ 17.

**{20}**   The State's contention that "no act ascribed to Defendant" would enable "any rational jury" to conclude that he committed an act of criminal negligence once again disregards the standard applicable to the review of denied jury instructions. The State's view of the evidence that Defendant "tracked [the Victim] down, rousted her from her hiding place, knocked her to the ground and, when she tried to get up, forcefully threw her head-first into the asphalt" is better suited to argue a sufficiency of the evidence challenge where we view the evidence in a light most favorable to a conviction. *State v. Romero*, 2005-NMCA-060, ¶ 18, 137 N.M. 456, 112 P.3d 1113. However, as we have explained, when considering the propriety of a denied jury instruction, "we view the evidence in the light most favorable to the giving of the requested instruction[s]." *Boyett*, 2008-NMSC-030, ¶ 12 (internal quotation marks and citation omitted).

**{21}**   For the foregoing reasons, we determine that sufficient evidence has been presented to allow reasonable minds to differ regarding whether Defendant acted with criminal negligence during his scuffle with Victim. *Rudolfo*, 2008-NMSC-036, ¶ 27.

3.     **Defendant's accident theory does not preclude an involuntary manslaughter instruction because sufficient evidence was presented at trial to support both theories.**

**{22}**   We also reject the State's related argument that Defendant's accident theory precludes giving an involuntary manslaughter instruction because the two theories denote inconsistent mental states. The State suggests that our decision in *Henley* supports its view that a theory of accident is incompatible with an involuntary manslaughter instruction.

7

2010-NMSC-039, ¶ 19. The State cites *Henley* for the proposition that "the mens rea of accident and involuntary manslaughter are irreconcilably distinct, and the evidence of one does not support instructing the jury on the other." However, *Henley* does not address instances when evidence of the mens rea of *both* accident and involuntary manslaughter is presented to the jury. Under these circumstances, the two theories of accident and involuntary manslaughter can properly be placed before the jury. *See id.*; *Lucero*, 2010-NMSC-011, ¶ 18. In fact, when a defendant's theory in a homicide case is an accidental killing, the committee commentary for the excusable homicide uniform jury instruction envisions that the "defendant will undoubtedly . . . bring out the absence of the elements of involuntary manslaughter." UJI 14-5140 NMRA, Committee Commentary. This recognition of the potential juxtaposition of the two theories clarifies that accident and involuntary manslaughter are compatible, although competing, explanations of the same event. *See Stevenson v. United States*, 162 U.S. 313, 322-23 (1896) (jury instructions on inconsistent theories are not improper if supported by the evidence).

**{23}** In this case, Defendant testified that Victim's death was accidental. Additional eyewitness testimony could also be construed consistent with Defendant's accident claim. As a result, because sufficient evidence was adduced in this regard, we leave it to the jury to decide what version it believes.

## C. Preservation

**{24}** Finally, we dispose of the State's claim that Defendant failed to preserve the jury instruction issue because he failed to provide the court with a "correct written instruction" pursuant to Rule 5-608(D) NMRA. The State asserts that to uphold the Court of Appeals finding that Defendant preserved the instruction issue would degrade our "adversarial system of justice" and introduce "a modified inquisitorial system in which judges litigate against the prosecution." We disagree.

**{25}** Rule 5-608(B) mandates that "[a]t the close of the defendant's case, or earlier if ordered by the court, the parties shall tender requested instructions in writing." To preserve an error for "failure to instruct on any issue, a correct written instruction must be tendered before the jury is instructed." Rule 5-608(D). The rule's purpose is to "alert the trial court to the defendant's argument," *State v. Jernigan*, 2006-NMSC-003, ¶ 10, 139 N.M. 1, 127 P.3d 537, and enable a "well-informed ruling" by the court, *State v. Griffin*, 2002-NMCA-051, ¶ 6, 132 N.M. 195, 46 P.3d 102. Therefore, while it is true that a defendant must "[g]*enerally*" tender a legally correct instruction to preserve the issue on appeal, Rule 5-608 is subject to flexible enforcement that is consistent with its underlying rationale. *See Jernigan*, 2006-NMSC-003, ¶ 10 (emphasis added); *see also Hill*, 2001-NMCA-094, ¶ 7 ("The State overlooks the purpose of the rule requiring the tender of a correct instruction, which is to alert the trial court to the defendant's argument."). Accordingly, "if the record reflects that the judge clearly understood the type of instruction the Defendant wanted and understood the tendered instruction needed to be modified to correctly state the law, then the issue is deemed preserved for appellate review." *Jernigan*, 2006-NMSC-003, ¶ 10.

8

**{26}** In this case, it is abundantly clear that the district judge was on notice that Defendant wanted an involuntary manslaughter instruction. Defendant proffered a clearly written involuntary manslaughter instruction. The proposed instruction begins with the unmistakable language "[f]or you to find the defendant guilty of involuntary manslaughter . . . ." The instruction then proceeds to enumerate all five elements contained in the corresponding uniform jury instruction, UJI 14-231 NMRA. The State contends that the first element, which requires a description of Defendant's lawful or unlawful act, provides only a "narrative" of the scuffle with Victim but fails to identify "any wrongful act." *Id*. The proffered instruction provided that "[Defendant] and [Victim] were engaged in an argument that escalated into a physical fight and [Victim] fell to the ground, struck her head and died as a result of her injuries." While the first element may be an imprecise articulation of Defendant's unlawful act, the use of the term "physical fight" alerted the district court to Defendant's theory that the "unlawful act not amounting to [a] felony" was a battery. Section 30-2-3(B). We do not demand exact precision in the wording of an instruction to preserve the issue for appeal. *See Jernigan*, 2006-NMSC-003, ¶ 14 (despite failure to define the elements of "attempted voluntary manslaughter," court deemed the failure to instruct preserved because the district court understood which instruction defendant sought).

**{27}** In addition to the written instruction, counsel and the district court engaged in an extensive colloquy where both sides made arguments regarding the propriety of Defendant's proposed instruction, again alerting the court to Defendant's theory and the relevant law. This exchange resulted in the district court explicitly addressing Defendant's request in which the judge rejected the instruction because "the involuntary is present, essentially, to the exclusion of [all] others." Far from signaling that the district court was unaware of Defendant's requested instruction, this testimony suggests that the judge may have actually believed that such an instruction was appropriate. Finally, when court reconvened the following morning, defense counsel reiterated its position, clarifying Defendant's theory that the evidence supported a finding that Defendant battered Victim, therefore providing the basis for an unlawful act involuntary manslaughter instruction. As a result of these interactions, the district court (1) was aware of Defendant's request and the underlying argument, (2) was presented with a written instruction, (3) allowed opposing counsel to respond, (4) provided an informed ruling on the subject, and (5) was in a position to correct any misstatements of the law contained in the proffered instruction. These events satisfy the rationale underlying the preservation requirement and are consistent with what New Mexico courts have required for preservation of a failure to instruct claim. *See, e.g., Jernigan*, 2006-NMSC-003, ¶¶ 10-15; *Griffin*, 2002-NMCA-051, ¶¶ 6-7. Therefore, the State's preservation argument fails.

## III.    CONCLUSION

**{28}** Based on our foregoing analysis and finding the issue preserved, we conclude that Defendant was entitled to an involuntary manslaughter instruction. We affirm the Court of Appeals and remand to the district court for proceedings consistent with this Opinion.

**{29}     IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

**Topic Index for _State v. Skippings_, Docket No. 32,137**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-PA | Preservation of Issues for Appeal |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-AG | Aggravating or Mitigating Circumstances |
| CL-BA | Battery |
| CL-CM | Criminal Negligence |
| CL-GV | General vs. Specific Offenses |
| CL-HO | Homicide |
| CL-IV | Involuntary Manslaughter |
| CL-MS | Misdemeanor |
| CL-VM | Voluntary Manslaughter |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-EO | Elements of Offense |
| CA-JI | Jury Instructions |
| CA-SE | Substantial or Sufficient Evidence |
| | |
| **EV** | **EVIDENCE** |
| EV-CR | Credibility of Witnesses |
| EV-SS | Substantial or Sufficient Evidence |
| | |
| **JI** | **JURY INSTRUCTIONS** |

JI-CJ      Criminal Jury Instructions
JI-FG      Failure to Give or Request