VIGIL, Judge (dissenting). {31} My colleagues conclude in separate opinions that the evidence in this case is insufficient to satisfy the elements of negligent child abuse by endangerment. Close scrutiny of those opinions demonstrates that what my colleagues have done is weigh the evidence, contrary to our standard of review. I respectfully submit that viewing the evidence as we are called to on appeal, the evidence is sufficient. Therefore, I dissent. {32} Because my colleagues conclude that the evidence is not sufficient to support the conviction for negligent child abuse, they do not address Defendant’s argument that Defendant was entitled to have the jury consider abandonment of a child as a lesser-included offense. On this point, I agree with Defendant. Since the district court denied Defendant’s request for the lesser-included instruction, I would reverse and remand for a new trial. SUFFICIENCY OF THE EVIDENCE {33} At trial, a neighbor testified that while she was getting ready for work at approximately 2:00 a.m., she heard Child crying outside. It had just finished raining, and it was cold. She went outside and found the three-year-old Child wandering around the parking lot wearing only a dirty diaper, and crying for his mother. A police officer who later arrived at the scene testified that the apartment and parking lot was in a high-crime area, that there was lots of traffic in the parking lot and adjoining streets, and that there was a reasonable probability that Child could have walked into traffic. {34} The neighbor asked Child where he lived and he pointed to the open door of an apartment in the complex. She called inside the apartment three or four times, but no one answered. She then went into the apartment, changed Child’s diaper, put him to bed, and gave him something to drink, before calling the police. {35} Going into the other bedroom of the apartment, the neighbor found Defendant sleeping on a bed. She repeatedly tried to awaken Defendant by nudging her and telling her that her baby had been outside. Defendant’s response was to open her eyes, close them, and say, “It’s ok.” She did not seem at all concerned and did not get up. Thinking that perhaps Defendant did not understand English, the neighbor asked a friend to speak to her in Spanish, and Defendant still did not respond, other than to look at them dazed and unresponsive. Defendant appeared to be very intoxicated. {36} When the police officer arrived at the apartment, Child looked terrified — he was shaken and disturbed. The apartment was filled with empty beer cans, vodka bottles, and other trash, and there was vomit on the floor in the dining area. There was also a small burnt portion of a marijuana cigarette and a marijuana pipe made from tin foil on the dining room table, which were within reach of Child. There was evidence that someone placed clothing around a smoke detector, as if to prevent it from alerting to the presence of smoke. There was also an open pocket knife on a table in Defendant’s bedroom, which was also in reach of Child. {37} The officer saw Defendant sitting up in bed “zoned out.” Clothes, trash, and vomit were also on the floor in the bedroom. Besides Defendant, there was also a man in the bedroom, lying on the floor between the bed and wall, face down in a dirty diaper. The man (who was not Child’s father) was taken outside, and Defendant was taken to the living room. After receiving her Miranda rights, Defendant was asked if she knew what was going on, and she responded that she had gotten drunk, was drunk, and had smoked marijuana from the marijuana pipe. {38} Defendant asserts that her motion for a directed verdict should have been granted notwithstanding the foregoing evidence. In reviewing the denial of a motion for a directed verdict, our task is to determine whether the underlying charge was proven by sufficient evidence. Sena, 2008-NMSC-053, ¶ 10. Recently, our Supreme Court reiterated: The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction. The reviewing court views the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict. The question before us as a reviewing court is not whether we would have had a reasonable doubt about guilt but whether it would have been impermissibly unreasonable for a jury to have concluded otherwise. State v. Torrez, 2013-NMSC-034, ¶ 40, 305 P.3 d 944 (alterations, internal quotation marks and citations omitted). {39} Precedent already exists in which a parent was convicted of negligent child abuse by endangerment based on evidence that the parent became intoxicated and left the child unsupervised. In Watchman, 2005-NMCA-125, ¶ 4, a mother was convicted of negligent child abuse by endangerment when she left her twenty-one-month-old child alone and asleep on the seat of her unlocked truck. Id. ¶¶ 4-5. The truck was parked in the parking lot of a bar where there were frequent fights, vandalism, and loitering. Id. ¶ 4. It was 1:30 a.m. when the police found the child, and the mother was intoxicated. Id. Although no actual harm came to the child, we concluded that there was sufficient evidence to support a finding that the child was negligently endangered. This evidence included the fact that the child was left alone in an unlocked vehicle, “unprotected and vulnerable to any passerby.” Id. ¶ 5. It was also “reasonably foreseeable that the child could have climbed out of the truck and wandered about the busy parking lot endangering himself by encountering an unsuspecting driver or rowdy patrons.” Id. There was also evidence to support a finding that the mother had been intoxicated when she drove her child to the bar’s parking lot. Id. Finally, we stated that the fact that there were open containers of alcohol further supported the conviction, because there was “a substantial and foreseeable risk of the consumption of such easily accessible toxic spirits.” Id. ¶¶ 4, 8. {40} Although it is difficult to assess the likelihood that a child might get out of a car and be harmed by drivers or rowdy patrons, our conclusion that injury to the child was foreseeable due to a lack of supervision is significant here. It is also significant that there was evidence to support a conclusion that the failure to supervise resulted, at least in part, from voluntary intoxication. The rule I take from Watchman is that when a jury finds that circumstances are present which require parental supervision to prevent danger to a child’s life or health, and a parent unjustifiably chooses to incapacitate herself from providing that supervision by intoxication, the jury may properly find that the parent has negligently endangered the child and therefore committed negligent child abuse. Admittedly, intoxication alone is not sufficient, but I submit that voluntary intoxication rendering one unable to provide supervision that is otherwise required under the circumstances is sufficient. {41} Negligent abuse of a child that does not result in death or great bodily harm in violation of Section 30-6-l(D)(l) consists of “negligently, and without justifiable cause, causing or permitting a child to be placed in a situation that may endanger the child’s life or health.” The crime requires criminal negligence, which “means that a person knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child.” Section 30-6-1(A)(3). Consistent with the statutory elements, the jury was instructed that in order to find Defendant guilty, it was required to find each of the following elements to have been proven beyond a reasonable doubt: 1. [Defendant] permitted [Child] to be placed in a situation which endangered the life or health of [Child]; 2. [Defendant acted with reckless disregard. To find that [Defendant] acted with reckless disregard, you must find that [Defendant] knew or should have known [Defendant’s conduct created a substantial and foreseeable risk, [Defendant disregarded that risk and [Defendant was wholly indifferent to the consequences of the conduct and to the welfare and safety of [Child], Applying Watchman, I conclude, under our standard of review, that each of these elements was proven. {42} There was sufficient evidence to support a finding by the jury that Defendant placed her three-year-old child in danger when she became so intoxicated that she tendered herself unconscious or semiconscious such that she was unable to properly supervise him. There was evidence that Defendant was so intoxicated that it was difficult to rouse her, and that once roused, she seemed to lack comprehension or concern about .what was going on around her. In fact, when Defendant’s neighbor first tried to wake her and told her that Child had been wandering around outside, Defendant said, “It’s ok” and-did not get up. This evidence supported a conclusion that had she noticed that her child was missing, or had Child been harmed and cried out, she would not have been' able to react appropriately. There was evidence that there were dangers in the house, such as a knife on a low table that was within' Child’s reach, and a small, burnt portion of a marijuana cigarette on the dining room table. A knife is clearly a foreseeable danger to a child, and our Supreme Court has specifically stated that marijuana also constitutes a foreseeable danger to a child. Graham, 2005-NMSC-004, ¶ 12; see also Watchman, 2005-NMCA-125, ¶ 8 (concluding that it was foreseeable that a child would be harmed by ingesting intoxicants that were in the child’s reach). There was also evidence that someone had placed clothing around a smoke detector, as if to prevent it from alerting to the presence of smoke. This intentional act endangered the child since if there had been a fire, the detector might not have sounded an alarm in order to alert Garcia, her companion, or the neighbors. {43} A door does not open itself, and the front door of the apartment was open. This supports a finding that either the intoxicated adults left the door open, allowing Child to get outside, or Child was able to open the door and get outside on his own. Either of these findings permitted the jury to conclude that it was foreseeable that Child could get outside. Once outside, there were innumerable dangers to a three-year-old child wandering alone at 2:00 a.m. in a parking lot with lots of traffic in the parking lot and adjoining streets, wearing only a soiled diaper in cold weather. There was also evidence that the neighborhood was a dangerous one in which crimes were often committed. As in Watchman, once the child was outside alone, he was “unprotected and vulnerable to any passerby.” 2005-NMCA-125, ¶ 5. {44} Child was not actually harmed. However, as our Supreme Court has explained, “[b]y including endangerment in Section 30-6-1, the Legislature expressed its intent to extend the crime of child abuse to certain conduct even if the child has not suffered physical harm.” Graham, 2005-NMSC-004, ¶ 9. See Chavez, 2009-NMSC-035, ¶ 15 (“[C]hild abuse by endangerment occurs when an adult knowingly, intentionally, or negligently places a child ‘in a situation that may endanger the child’s life or health.’” (citation omitted)). The fact that Child was not harmed does not diminish the dangers Child was exposed to because of Defendant’s negligence in this case. The evidence in my view supports the jury’s finding that D efendant committed negligent child abuse by endangerment. Since the majority disagrees, I dissent. Denial of an Instruction on Abandonment {45} Defendant contends reversible error resulted when the district court denied her request that the jury be instructed on abandonment of a child as a lesser-included offense to negligent child abuse by endangerment. I agree and would reverse and remand for a new trial on this basis. {46} The State first argues that Defendant did not adequately preserve this issue for review on appeal because she did not tender a written instruction on abandonment in the district court. While Rule 5-608(D) NMRA provides that in order to preserve an error for “failure to instruct on any issue, a correct written instruction must be tendered,” our Supreme Court has stated that this rule is “subject to flexible enforcement that is consistent with its underlying rationale.” State v. Skippings, 2011-NMSC-021, ¶ 25, 150 N.M. 216, 258 P.3d 1008. The purpose of the rule requiring a defendant to tender a correct written instruction is to “alert the trial court to the defendant’s argument.” Id. (internal quotation marks and citation omitted). {47} Here, although Defendant did not tender a written instruction, she recited to the district court the statutory elements of abandonment. Specifically, Defendant informed the district court that Section 30-6-1(B) provides that abandonment of a child consists of a parent “intentionally leaving or abandoning the child under circumstances whereby the child may or does suffer neglect.” Defendant further explained why she believed the facts of the case entitled her to an instruction on “leaving” but not “abandoning” Child. The district court was therefore clear about the elements of abandonment on which Defendant wanted the jury instructed. Further, after the district court ruled that an instruction on abandonment was not going to be given, Defendant submitted a list of additional instructions she asserted would have been appropriate to give if her request for the lesser-included instruction on abandonment had been granted. Under all the foregoing circumstances, the purpose of the rule was met and Defendant adequately preserved her argument for appellate review. Compare State v. Badoni, 2003-NMCA-009, ¶ 7, 133 N.M. 257, 62 P.3d 348 (holding that a defendant had failed to preserve an argument that a jury instruction should have been given where the defendant “neither. tendered a written instruction nor orally dictated one” and the record did not show, that the defendant “informed the trial judge of the specific language he wanted in a modified instruction”). {48} On the merits, the denial of a jury instruction presents a mixed question of law and fact, which we review de novo. State v. Gaitan, 2002-NMSC-007, ¶ 10, 131 N.M. 758, 42 P.3d 1207. A defendant is entitled to a lesser-included instruction, under the cognate approach adopted by our Supreme Court in State v. Meadors, 1995-NMSC-073, 121 N.M. 38, 908 P.2d 731, when the following conditions are satisfied: (1) the defendant could not have committed the greater offense in the manner described in the charging document without also committing the lesser offense, and therefore notice of the greater offense necessarily incorporates notice of the lesser offense; (2) the evidence adduced at trial is sufficient to sustain a conviction on the lesser offense; and (3) the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser. Id. ¶ 12. See State v. Juan, 2010-NMSC-041, ¶ 23, 148 N.M. 747, 242 P.3d 314 (stating the tests that are applicable when a defendant makes the request for a lesser-included instruction). Thus, we examine not only the offense charged, but also the evidence at trial to determine if an instruction was properly denied. Id. In this regard, we are required to view the evidence in the light most favorable to the giving of the requested instruction. State v. Boyett, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355. {49} In pertinent part, “abandonment of a child” consists of a parent “intentionally leaving”, a child “under circumstances whereby the child may or does suffer neglect.” Section 30-6-l(B). Paraphrasing, “neglect” in turn means that because of the parent’s “neglect or refusal” a child is without parental “care or control necessary for the child’s well-being.” Section 30-6-1 (A)(2). The connotation of the word “leaving” is one of separation. Thus, “leave” is defined in part to mean, “to take leave of or withdraw oneself from whether temporarily or permanently: go away or depart from.” Webster’s Third New Int’l Dictionary 1287 (unabridged ed. 2002). The word “leaving” is not limited to a physical, emotional, psychological, or mental component, nor has our Legislature indicated that the word should be so limited, when the care and well-being of a child are concerned. In fact, the Legislature seems to have expressed its intent that all forms of “leaving” a child by a parent are prohibited when the result is that the child is without parental care or control necessary for the child’s well-being. When death or great bodily harm does not result from the abandonment, a parent commits a misdemeanor. Section 30-6-1 (B). {50} The evidence at trial was that Defendant knowingly consumed marijuana and consumed alcohol to such a degree as to incapacitate herself from being able to provide for the proper care and control of Child and thereby endangered Child’s life or health. I have already discussed why this evidence supports a conviction for negligent child abuse by endangerment. The evidence also supports a conviction for abandonment: her intoxication caused her to “leave” her child, rendering her unable to provide for the proper care and control necessary for the well-being of her three-year-old child. Thus, under the evidence in this case, Defendant could not commit the third degree felony of negligent child abuse by endangerment without also committing the misdemeanor of abandonment of a child by leaving Child. The dispute for the jury to determine was whéther Defendant’s conduct resulted in the failure to provide for the well-being of Child or resulted in endangering Child’s life or health. Under the cognate approach of Meadors, reversible error resulted when the district court refused Defendant’s request that the jury be instructed on the lesser-included offense of abandonment of a child. CONCLUSION {51} For the foregoing reasons, I would reverse Defendant’s conviction for negligent child abuse by endangerment and remand for a new trial in which the jury is entitled to decide whether Defendant committed the third degree felony offense of negligent child abuse by endangerment, or the misdemeanor offense of abandonment of a child. Since the majority disagrees, I dissent. MICHAEL E. VIGIL, Judge