This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37497**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DANIEL AGUILERA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant Daniel Aguilera appeals his convictions for second-degree murder, contrary to NMSA 1978, Section 30-2-1(B) (1994), and aggravated battery with a deadly weapon, contrary to NMSA 1978, Section 30-3-5(C) (1969). Defendant argues the district court erred in failing to instruct the jury on (1) voluntary manslaughter as a lesser-included offense of second-degree murder, and (2) self-defense with respect to the aggravated battery charge. We reverse Defendant's conviction for second-degree murder and remand for a new trial as to this charge, but we otherwise affirm.

**BACKGROUND**

**{2}** Defendant's appeal arises from his use of lethal force in a confrontation with two men, brothers Andy and Luis Rojo. Luis Rojo and Savalo Huerta were neighbors. On the fourth of July, 2015, Defendant and Savalo went to Savalo's house to drink beer but discovered that there was no beer in the house. Savalo stopped by Luis's house to see if anyone would buy him beer. Luis's brother, Andy, appeared, and he and Savalo had an angry verbal exchange. When Savalo returned to his house, Andy and Luis approached Savalo and invited him to their house. Savalo testified that he agreed, hoping to "resolve whatever issue there was." Eventually, Defendant walked to Luis's house to check on Savalo. At this point, the testimony diverges. Defendant testified that when he approached the house and asked about Savalo, Andy became "aggravated" and "started coming towards" Defendant. According to Defendant, he warned Andy to leave him alone, drew his gun, and retreated several steps. Luis testified that Defendant pointed his gun at Andy's chest causing Andy to pause and look at the laser on his chest before Andy then continued walking toward Defendant. Defendant and Savalo testified that as Andy continued to advance, Andy reached behind his back, at which point Defendant shot Andy, killing him. Luis testified that he yelled out Andy's name and then began to climb the fence to run toward Defendant. Defendant then shot Luis, injuring him.

**{3}** Defendant was charged with second-degree murder for Andy's death, and aggravated battery (deadly weapon) for shooting Luis. Following a jury trial, Defendant was convicted of both charges. Defendant appeals his convictions.

**DISCUSSION**

**I.      Standard of Review**

**{4}** "The propriety of jury instructions denied or given involves mixed questions of law and fact that we review de novo." *State v. Skippings*, 2011-NMSC-021, ¶ 10, 150 N.M. 216, 258 P.3d 1008. "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instructions." *Id.* (alteration, internal quotation marks, and citation omitted). "A defendant is entitled to an instruction on his or her theory of the case if evidence has been presented that is sufficient to allow reasonable minds to differ as to all elements of the offense." *Id.* (internal quotation marks and citation omitted). A defendant is entitled to an instruction on a lesser-included offense if there is "some view of the evidence pursuant to which the lesser offense is the highest degree of crime committed, and that view must be reasonable." *Id.* (internal quotation marks and citation omitted).

**II.     The District Court Erred By Not Providing A Voluntary Manslaughter Instruction**

**{5}** Defendant argues that sufficient evidence of provocation existed to warrant the voluntary manslaughter jury instructions he requested. We agree. Defendant submitted

a jury instruction for voluntary manslaughter as a lesser-included offense of the second-degree murder charge, providing the following: Defendant (1) killed Andy; (2) knew that his acts created a strong probability of death or great bodily harm to Andy; and (3) acted as a result of sufficient provocation. *See* UJI 14-220 NMRA (setting forth elements of voluntary manslaughter as a lesser-included offense). "The critical difference between murder and voluntary manslaughter is the existence of legally sufficient provocation." *State v. Munoz*, 1992-NMCA-004, ¶ 5, 113 N.M. 489, 827 P.2d 1303. Provocation is defined as "any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions." *State v. Jernigan*, 2006-NMSC-003, ¶ 24, 139 N.M. 1, 127 P.3d 537 (internal quotation marks and citation omitted). Notably, provocation is defined, at least in part, as fear. *State v. Melendez*, 1982-NMSC-039, ¶ 12, 97 N.M. 738, 643 P.2d 607. As a result, when "evidence is sufficient to raise a question of self-defense, an instruction on voluntary manslaughter should also be submitted to the jury where the evidence supports sufficient provocation of fear for one's own safety." *State v. Abeyta*, 1995-NMSC-051, ¶ 20, 120 N.M. 233, 901 P.2d 164, *abrogated on other grounds by State v. Campos*, 1996-NMSC-043, ¶ 32 n.4, 122 N.M. 148, 921 P.2d 1266; *see also id.* ¶ 47 ("[W]here sufficient evidence is presented to support a finding that a defendant acted in self-defense, a defendant is entitled to have the jury receive an instruction on voluntary manslaughter based on imperfect self-defense.").

**{6}** Here, the evidence established sufficient provocation. When Defendant shot Andy, he testified that he was afraid Andy was reaching for a weapon. Even though no evidence was presented that Andy was actually armed or verbally threatened Defendant, Defendant testified that he was "afraid" because he thought Andy was reaching for a "gun, knife," or some kind of weapon. *See State v. Henley*, 2010-NMSC-039, ¶ 20, 148 N.M. 359, 237 P.3d 103 (stating in the context of voluntary manslaughter, "[i]mperfect self-defense occurs when an individual uses excessive force while otherwise lawfully engaging in self-defense"); *see also Abeyta*, 1995-NMSC-051, ¶ 17 (explaining that imperfect self-defense arises from "the unreasonable belief in the need for self-defense"). During Defendant's conversation with Luis, Andy became annoyed and approached Defendant in an "aggravated" manner. After Defendant warned Andy to leave him alone while retreating several steps and drawing his gun, Andy continued advancing toward Defendant. When Defendant saw Andy reaching behind his back, Defendant fired twice, testifying that he was "just try[ing] to stop" Andy, not kill him. Viewing the evidence in the light most favorable to the giving of Defendant's requested instruction, we conclude there was sufficient evidence of provocation to justify giving the jury an instruction on voluntary manslaughter. *See Jernigan*, 2006-NMSC-003, ¶¶ 5, 24-25 (holding that sufficient provocation for voluntary manslaughter jury instructions exists when a defendant uses deadly force out of a fear that the victim is reaching for a gun in "his waistline area" (internal quotation marks omitted)). Accordingly, we reverse Defendant's conviction for second-degree murder and remand for a new trial on this count.

## III. The District Court Properly Denied the Self-Defense Instruction for Aggravated Battery

**{7}** Defendant also argues that the district court erred in denying his request for a self-defense jury instruction on the aggravated battery charge. Defendant contends that because Luis was moving toward him before Defendant shot him, he was entitled to a self-defense jury instruction. We disagree.

**{8}** The requirements for self-defense are "(1) an appearance of immediate danger of death or great bodily harm to the defendant; (2) the defendant was in fact put in such fear; and (3) a reasonable person would have reacted in a similar manner." *State v. Martinez*, 1981-NMSC-016, ¶ 4, 95 N.M. 421, 622 P.2d 1041. The first two requirements are "subjective in that they focus on the perception of the defendant at the time of the incident." *State v. Coffin*, 1999-NMSC-038, ¶ 15, 128 N.M. 192, 991 P.2d 477. However, "the third requirement is objective in that it focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant." *Id.* "A defendant is only entitled to jury instructions on a self-defense theory if there is evidence presented to support every element of that theory." *State v. Baroz*, 2017-NMSC-030, ¶ 14, 404 P.3d 769.

**{9}** Defendant relies on *State v. Cooper*, arguing that "[w]hen two or more persons undertake overt action to harm another, the victim may use the appropriate amount of force to defend himself against either aggressor[.]" 1999-NMCA-159, ¶ 11, 128 N.M. 428, 993 P.2d 745. "While it is true that a person may act in self-defense against multiple attackers acting in concert, this principle applies only to the extent that each accomplice poses an immediate danger of death or great bodily harm[.]" *Coffin*, 1999-NMSC-038, ¶ 12. For deadly force to be justified, "there must be some evidence that an objectively reasonable person, put into [the d]efendant's subjective situation, would have thought that he or she was threatened with death or great bodily harm, and that the use of deadly force was necessary to prevent the threatened injury." *Cooper*, 1999-NMCA-159, ¶ 8 (alteration, internal quotation marks, and citation omitted).

**{10}** Here, the evidence does not support a theory of self-defense because neither party presented evidence tending to show that Luis's actions demonstrated "an immediate danger of death or great bodily harm" necessary for the first subjective element. UJI 14-5183 NMRA (stating elements of self-defense when deadly force is used by the defendant). Importantly, Defendant never testified that he believed Luis to be armed. While Defendant testified that he knew Luis owned guns, he also knew that Luis's guns had been stolen. Luis testified that even though he was near Defendant, he was still going over the fence when Defendant shot him. Given this lack of evidence supporting the first element of self-defense, the third element must similarly fail, as a reasonable person, put into Defendant's situation, would not have reacted with deadly force because there was no appearance of immediate danger of death or great bodily harm. *See Coffin*, 1999-NMSC-038, ¶ 12; *see also Baroz*, 2017-NMSC-030, ¶¶ 17-18, (holding that the defendant coming to the victim's property without evidence that the victim was thought to be carrying a gun did not rise to the "standard of objective reasonableness" for the use of deadly force in self-defense). Thus, we find no error in the district court's refusal to give a self-defense jury instruction.

**CONCLUSION**

**{11}** For the foregoing reasons, we reverse Defendant's conviction for second-degree murder and remand for a new trial as to this charge, but we otherwise affirm.

**{12}   IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MEGAN P. DUFFY, Judge**