IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2020-NMCA-019

Filing Date: July 31, 2019

No. A-1-CA-35971

**JUSTIN GOODMAN,**

Plaintiff-Appellee,

v.

**OS RESTAURANT SERVICES, LLC
f/k/a OS RESTAURANT SERVICES INC.
d/b/a OUTBACK STEAKHOUSE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Manuel I. Arrieta, District Judge**

Certiorari Dismissed, January 13, 2020, No. S-1-SC-37873. Released for Publication May 5, 2020.

Brett Duke, P.C.
Brett Duke
El Paso, TX

Law Firm of Daniela Labinoti, P.C.
Daniela Labinoti
El Paso, TX

for Appellee

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Scott D. Gordon
Albuquerque, NM

for Appellant

**OPINION**

**HANISEE, Judge.**

**{1}** Defendant OS Restaurant Services, LLC (Outback) appeals from the district court's judgment and certain pre- and posttrial rulings associated with a jury's finding that Outback violated the New Mexico Human Rights Act (NMHRA). On appeal, Outback contends that under the NMHRA: (1) Plaintiff's previously-filed worker's compensation claim does not provide a basis for his claim that Outback retaliated against him; (2) Plaintiff failed to establish that he had a reasonable, objective, good-faith belief he was disabled or Outback believed him to be disabled when it terminated his employment; and (3) inconsistent evidentiary and legal rulings by the trial court deprived Outback of a jury determination as to whether Plaintiff was disabled. We affirm.

## I.    BACKGROUND

**{2}** Plaintiff hurt his ankle while working at the Outback Steakhouse in Las Cruces, New Mexico. He immediately reported the injury to his supervisor, Dustin York. Several minutes later Plaintiff discovered that his ankle was discolored and swollen to a size larger than a grapefruit. Unable to walk from the restaurant without support, Plaintiff left using crutches that his wife brought to him upon learning of his injury. When Plaintiff told York that he wanted to file a worker's compensation claim and asked for an incident report, York replied that Plaintiff did not need to file such a claim and suggested that Plaintiff was not injured while working. York also told Plaintiff that an incident report was not required to receive medical treatment utilizing worker's compensation benefits, which was inaccurate. When Plaintiff persisted in his desire to file a worker's compensation claim, York both delayed submitting the claim with Outback's insurance carrier and entered an incorrect date of injury, which slowed the availability of Plaintiff's worker's compensation benefits.

**{3}** According to Plaintiff, three days after his injury, York informed him that because he wanted to file a worker's compensation claim, Plaintiff "would no longer be promoted" to assistant manager, as Plaintiff had anticipated, because he was perceived to be "unreliable." Plaintiff nevertheless insisted that his worker's compensation claim be submitted, at which point York continued to obfuscate, giving Plaintiff two toll-free numbers that were actually phone numbers for Wells Fargo Bank. Plaintiff finally asked his medical care provider to call York, and York eventually acquiesced and told Plaintiff he would file the claim.

**{4}** Five days after his injury, Plaintiff asked York to make an accommodation for him so he could return to work, but York refused. By then, Plaintiff could walk while wearing a protective boot, but not well enough to be a server. Plaintiff suggested that he could expedite food orders (expediting work) or do prep work in the kitchen (prep work), but York did not think Plaintiff could perform those alternative duties with his impairment. Sometime later, Plaintiff told his coworker Eric Tyler that he wanted to contact an attorney, which Tyler reported to another supervisor.

**{5}** Approximately five weeks after his injury, Plaintiff contacted Jacilyn Jolly, Outback's employment paralegal, and reported that York had taken actions to delay his

worker's compensation benefits and refused to accommodate him. Two days later, ostensibly because it was York's policy to terminate employees who had not worked in over thirty days, Plaintiff was fired. Over the course of the next several weeks, Plaintiff developed osteomyelitis, a rare type of bone infection that arose as a complication of his ankle injury, spread through both of his legs, and persisted for nine months.

{6}     Plaintiff's amended complaint alleged three causes of action. Under the NMHRA, Plaintiff alleged alternative bases for liability: First, that Outback unlawfully discriminated against him based upon "his disability and/or perceived disability"; and Second, that Outback's actions "also constitute[d] a bad faith worker's compensation retaliation claim." Plaintiff also alleged common law tort claims for retaliatory discharge, also premised upon Plaintiff's worker's compensation claim, and for negligent hiring, training, supervision, and retention of York. Prior to trial, Outback filed its motion in limine which sought exclusion of evidence related to "the exacerbation of Plaintiff's ankle injury," which Outback contended to be irrelevant, and Outback's alleged "failure to accommodate Plaintiff's disability" because Plaintiff's amended complaint did not allege such a claim under the NMHRA. In its written order granting the motion in part, the district court ruled that Plaintiff lacked evidence establishing a "long term or permanent" injury that "substantially limit[s] a major life activity[,]" which rendered any accommodation-premised claim non-cognizable under the NMHRA, but that Plaintiff could assert that his medical treatment was delayed because of Outback's actions.

{7}     A jury trial ensued, and after the presentation of evidence Outback sought judgment as a matter of law under Rule 1-050(A)(2) NMRA on all counts. As relevant to this appeal, and first regarding Plaintiff's NMHRA claim for discrimination, Outback reminded the district court of its evidentiary ruling on Outback's motion in limine, arguing that the trial evidence failed to establish that Plaintiff's injury was a serious medical condition as that term is utilized in the NMHRA and did not reveal knowledge on the part of Outback regarding any such condition. Secondly, as to Plaintiff's NMHRA claim of retaliation, Outback contended that Plaintiff failed to show that he "engaged in a protected activity" on which retaliation was premised.

{8}     With respect to the first component of Outback's motion, the district court stated that Plaintiff "ha[d] failed to establish and [could not] establish that [his injury] was a medical condition or disability as defined under the [NMHRA]." The court added that the regulatory definition of a serious medical condition was unmet because Plaintiff seemed only to have a "sprained ankle or a seriously sprained ankle[,]" and "[t]here did not appear to be any impairment that would come out of it nor [would be] expected." The court observed that "[t]he problem is we don't have any medical evidence to substantiate the medical condition that existed as of [Plaintiff's date of injury]. I was surprised that everybody pulled the medical records out, but that's a trial decision." Accordingly, the court announced its intention to not permit Plaintiff's claim of discrimination based on a serious medical condition or a disability under the NMHRA to proceed to the jury. Although the record is less clear regarding its rationale for permitting Plaintiff's NMHRA retaliation claim to proceed to the jury, the court stated its

perception that Plaintiff's submission of a worker's compensation claim could be a basis for it.

**{9}** Before deliberations began the following morning, the district court instructed the jury and provided it with a special verdict form. Among other responses supplied in conjunction with the jury's partial verdict for Plaintiff—that is, a verdict that rested solely upon Plaintiff's NMHRA claim—the jury concluded that Plaintiff's filing of a worker's compensation claim was not "a motivating factor" in Outback's decision to discharge him, nor had Outback negligently "retain[ed] or supervis[ed]" York. Consistent with the special verdict form, those answers appear to have eliminated the common law torts of retaliatory discharge and negligent hiring, supervision and retention of York. In answering "Yes" in response to the same special verdict form's question as to whether or not Outback violated the NMHRA, the jury's conclusion could only have rested upon the lone instruction it received regarding the NMHRA, which stated only generally that in order to have violated the NMHRA Outback must have engaged in some form of "threat, retaliation, or discrimination against [Plaintiff for] oppos[ing] an unlawful discriminatory practice." The jury instructions lacked definitions or guidance regarding what constitutes an unlawful threat, retaliatory act, or a discriminatory act or practice, and the special verdict form did not seek specificity as to the basis for a finding of Outback's liability under the NMHRA. Outback expressed reservations regarding, but notably did not object to the special verdict form, predicting that because the form only generally asked whether Outback violated the NMHRA, "the appellate court will not know whether [an NMHRA verdict against Outback would rest upon] protected activity involving Plaintiff's [w]orker's [compensation] claim, or . . . things that fall within the four corners of the [NMHRA]."[1] In conjunction with its affirmative response to the form's question regarding whether Outback violated the NMHRA, the jury awarded Plaintiff $60,000 in damages for lost wages and $35,000 in damages for emotional distress.

**{10}** Following the verdict, Outback filed a renewed motion for judgment as a matter of law. The motion focused solely on whether an employee's filing of a worker's compensation claim can amount to protected activity for the purpose of an NMHRA retaliation claim. Specifically, it asserted that "[Plaintiff] prevailed on only . . . [his] claim that Outback had violated the anti-retaliation provision [of the NMHRA] by discharging [Plaintiff] for filing a worker's compensation claim." Plaintiff responded in part by arguing that "Plaintiff had multiple causes of action . . . under three legal theories from the same common core of operative facts" and that aspect of the verdict that concluded that Outback violated the NMHRA was supported by testimony regarding Plaintiff's engagement in numerous protected activities for which retaliation is disallowed. In reply, Outback renewed its argument that Plaintiff "failed to establish that he suffered from a disability or that he was perceived as disabled by Outback on or before the date that he was terminated. Nor does Plaintiff's proof establish that it was objectively reasonable for him to believe that he was disabled on that date."

---

1In response to Outback's concern, the district court stated its contrary belief that "the jury instructions . . . are specific that the claim here is for retaliatory discharge under . . . the [NMHRA].

**{11}** During the hearing on Outback's renewed motion, both parties and the district court were unsure of the basis upon which the jury reached its verdict. For example, Outback believed the only basis for Plaintiff's NMHRA retaliation claim as it was presented to the jury was Plaintiff's filing of a worker's compensation claim. Plaintiff believed the district court "agreed with [Plaintiff]" that "there was another cause of action under [the NMHRA that] prohibits threats, reprisal, [and] retaliation for making a complaint," including complaints about failure to accommodate because of a disability. For its part, and reflecting on Outback's argument that the jury was not instructed as to what constitutes an unlawful discriminatory practice or protected activity under the NMHRA, the district court said,

> Yeah, I had difficulty in submitting both theories as alternative theories. I would have preferred one over the other, but it went on both. The special verdict [form expressed that] Outback had violated the [NMHRA]. Now, the question is, what does [the jury's] finding mean? To me, it means that they, the jury, found that in retaliation for filing a worker's comp[ensation] claim on a serious physical injury, the jury could have found that they terminated [Plaintiff]. That's how I read it. It's not a tort claim, but it is a finding under the [NMHRA]. The other finding that's probable here from the jury is that [Plaintiff] had opposed an unlawful discriminatory practice . . . related to the worker's comp[ensation] claim.

**{12}** Adding to the perplexity, the district court's own position with respect to whether Plaintiff proved the occurrence of a serious medical condition diverged from that expressed in its order granting Outback's motion in limine and its ruling that appeared to grant Outback's pre-verdict motion for judgment as a matter of law as to Plaintiff's claim of disability discrimination under the NMHRA: "Now that I've sat at trial and I've seen the exhibits . . . there is evidence to tie the lack of accommodation as a retaliatory discriminatory practice" and that "there was evidence here of a serious physical injury so I think the jury rightfully found so."

**{13}** Ultimately, the district court's ruling denying Outback's renewed Rule 1-050 motion rested upon its conclusion that: "The parties instructed the jury that [in order for Plaintiff to prevail it must] find an unlawful discriminatory practice. I think the jury could have tied in the worker's comp[ensation] claim to the serious medical condition and that's what we've got. I can't see it any other different way." Following issuance of the district court's one-page order of denial, Outback appealed.

## II.    DISCUSSION

**{14}** On appeal, Outback argues that the jury's verdict must be reversed, or that a new trial should be granted, for three reasons. First, because the NMHRA does not protect Plaintiff from retaliation based on his filing a claim for worker's compensation benefits. Second, because Plaintiff did not objectively and reasonably believe himself to be disabled or that he was regarded by Outback to be disabled within the scope of the NMHRA. Third, because the district court's inconsistent rulings regarding the issue of

Plaintiff's disability status deprived Outback of a jury determination on an essential element of Plaintiff's NMHRA retaliation claim.

## A.      Preliminary Matters

**{15}**    Before resolving Outback's points of appeal, we first address the nature of the task at hand. We do so because our review of the district court record reveals an overarching state of confusion poorly suited to clarification on appeal. The quandary began when the district court partially granted Outback's motion in limine, appearing to exclude evidence related to Plaintiff's injury from the standpoint of workplace accommodation, then nonetheless admitted non-medical evidence of Plaintiff's injury and Outback's responses thereto, which reflected Outback's unwillingness to allow Plaintiff to return to work in any capacity, its delay in filing his worker's compensation claim, and ultimately its termination of Plaintiff's employment. The confusion deepened when the district court purported to grant Outback judgment as a matter of law as to that aspect of Plaintiff's NMHRA claim that was premised on disability discrimination due to a serious medical condition, then nonetheless generally instructed the jury that one basis upon which Outback's liability under the NMHRA could rest is discrimination. Finally, the special verdict form (to which no party objected) cemented our inability to know just *how* Outback violated the NMHRA, only generically inquiring *whether* Outback violated the NMHRA. Postverdict litigation did little more than solidify the puzzlement of much that we are now asked to resolve on appeal. In this circumstance, therefore, we begin by reiterating certain core appellate principles.

**{16}**    First, on appeal, "there is a presumption of correctness in the rulings and decisions of the [district] court[,] and the party claiming error must clearly show error." *Best v. Marino*, 2017-NMCA-073, ¶ 42, 404 P.3d 450 (internal quotation marks and citation omitted); *see Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 ("Appellant must affirmatively demonstrate its assertion of error."). We do not presume a district court applied an incorrect standard of proof. *Robertson v. Carmel Builders Real Estate*, 2004-NMCA-056, ¶ 25, 135 N.M. 641, 92 P.3d 653. As well, "[j]ury instructions become the law of the case against which sufficiency of the evidence is to be measured." *Muncey v. Eyeglasses World, LLC*, 2012-NMCA-120, ¶ 21, 289 P.3d 1255 (internal quotation marks and citation omitted). A party that fails to object to jury instructions "is in no position to complain about the theories of liability . . . and damages . . . given to the jury." *Pub. Serv. Co. of N.M. v. Diamond D Const. Co.*, 2001-NMCA-082, ¶ 28, 131 N.M. 100, 33 P.3d 651. More concretely, when a party has not raised a claim of jury instruction error on appeal, the "unchallenged jury instructions are therefore the law of the case." *Estate of Saenz v. Ranack Constructors, Inc.*, 2018-NMSC-032, ¶ 40, 420 P.3d 576. Jury verdicts will be affirmed when consistent with the instructions given and the evidence at trial. *See Littell v. Allstate Ins. Co.*, 2008-NMCA-012, ¶¶ 14-16, 38-42, 70, 177 P.3d 1080 (upholding jury verdict premised upon the plaintiff's claims of hostile work environment and retaliatory constructive discharge based on the instructions provided and the evidence supporting the separate causes of action). Lastly, "[u]nder the 'general verdict rule,' a general verdict may be affirmed under any theory supported by evidence unless an

erroneous jury instruction was given." *Christopherson v. St. Vincent Hospital*, 2016-NMCA-097, ¶ 23, 25-26, 384 P.3d 1098 (determining a verdict to be general in nature despite responses to "special verdict" questions that "were very general" and recognizing that the general verdict rule permits affirmance "on any of the seven theories advanced by [the p]laintiff . . . [if] supported by the evidence."); *see Bustos v. Hyundai Motor Co.*, 2010-NMCA-090, ¶ 48, 149 N.M. 1, 243 P.3d 440 (also stating the general verdict rule).

**{17}**   Outback challenges no specific pre-verdict ruling by the district court as a stand-alone basis for reversal. It does not contend that the jury instructions, including that which defined liability under the NMHRA or the special verdict form which sought only a general determination of liability under the NMHRA, were erroneous. It does not directly argue that the jury's verdict was not supported by sufficient evidence or that the verdict itself was improper in light of the law of the case, here the unchallenged jury instructions. Moreover, if the jury's verdict is legally sustainable on any NMHRA theory advanced by Plaintiff, we need consider its propriety no further.

**{18}**   Bearing in mind this overarching framework of appellate review, we first address the determinative aspect of Outback's second point of appeal; that is, its contention that it is entitled to judgment as a matter of law on Plaintiff's NMHRA retaliation claim because Plaintiff did not establish that he had an "objectively reasonable, good faith belief that Outback *regarded him* as disabled" at the time Plaintiff engaged in the protected activity of complaining to Jolly about York's treatment of him. (Emphasis added.) Plaintiff counters that he "could have reasonably believed that he possessed a handicap or serious medical condition because Outback regarded him as having such a condition, even if his injury was not in fact substantially limiting."

**{19}**   Although Outback's framing of this issue and both parties' arguments on this point reflect a misunderstanding of what it means for Outback to have regarded Plaintiff to be disabled, which we will explain later in this opinion, we ultimately conclude that Plaintiff established that Outback regarded him to be physically handicapped as that term of art is utilized in the NMHRA. Based on our affirming this theory of liability in the context of the jury's general verdict, we decline to reach Outback's contention that the filing of a worker's compensation claim cannot be a basis for liability under the NMHRA. Accordingly, we affirm the district court's ruling on Outback's renewed motion for judgment as a matter of law and leave undisturbed the jury verdict in favor of Plaintiff on his NMHRA retaliation claim. We also conclude that the district court's inconsistent rulings do not warrant reversal because Outback acquiesced to, or waived its objections to, the jury instructions and special verdict form that embodied the district court's rulings.

## B.   The New Mexico Human Rights Act

**{20}**   Under the NMHRA, it is an unlawful discriminatory practice for "an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of

compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition[.]" NMSA 1978, § 28-1-7(A) (2004, amended 2019). It is also an unlawful discriminatory practice for an employer to "engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice." Section 28-1-7(I)(2).

**{21}**    The NMHRA defines "physical or mental handicap" as "a physical or mental impairment that substantially limits one or more of a person's major life activities. A person is also considered to be physically or mentally handicapped if the person has a record of a physical or mental handicap or is regarded as having a physical or mental handicap[.]" NMSA 1978, § 28-1-2(M) (2007). The NMHRA defines "major life activities" to be "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working[.]" Section 28-1-2(N). Here, neither party suggests that the record supports the proposition that Plaintiff actually had a physical handicap. The relevant question with respect to Plaintiff's NMHRA retaliation claim, therefore, is whether Outback regarded Plaintiff to be physically handicapped (disabled) when it retaliated against him for opposing its unlawful discriminatory practice. *See* § 28-1-7(I)(2) (defining retaliation under the NMHRA); § 28-1-2(M) ("A person is also considered to be physically or mentally handicapped if the person has a record of a physical or mental handicap or is regarded as having a physical or mental handicap[.]").

**{22}**    Our Supreme Court has instructed that in interpreting the NMHRA, "it is appropriate to rely upon federal adjudication for guidance in analyzing a claim under the Act," with the caveat that we have not "adopted federal law as our own," and that we do not bind "New Mexico law to interpretations made by the federal courts of the federal statute." *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMSC-004, ¶ 8, 131 N.M. 607, 41 P.3d 333 (internal quotation marks and citation omitted). The NMHRA definition of "physical or mental handicap" is substantially similar to the Americans with Disabilities Act's (ADA's) definition of "disability." *Compare* § 28-1-2(M), *with* 42 U.S.C. § 12102(1) (2012) ("The term 'disability' means, with respect to an individual[:] (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment"). More importantly, *Trujillo* also stated that in the context of an NMHRA medical condition discrimination case, the NMHRA terms "serious medical condition" and "handicap" are interchangeable with the ADA term "disability." *See* 2002-NMSC-004, ¶ 8. The ADA was amended in 2008 to "explicitly lower[] the standard for 'substantially limits,' " and to state " 'the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis.' " *Rico v. Xcel Energy, Inc.*, 893 F.Supp.2d 1165, 1168 (D.N.M. 2012) (quoting Pub. L. No. 110-325, §§ 2(a)(6), 2(b)(5) (2008), 122 Stat. at 3553-54). As Outback notes, however, the NMHRA has not been similarly amended and no reported New Mexico decision has applied the amended federal standards to the NMHRA, so we rely on federal cases interpreting the ADA prior to its 2008 amendments.

**{23}** The Tenth Circuit has stated that an employer regards an employee as impaired under the ADA—or in NMHRA parlance, regards an employee as having a "physical handicap"—if it "(1) . . . mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) . . . mistakenly believes that the person's actual, non-limiting impairment substantially limits one or more major life activities." *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1241 (10th Cir. 2001) (internal quotation marks and citation omitted). Interpreting just the ADA, this Court has applied the same definition. *Katcher v. Johnson Controls World Servs., Inc.*, 2003-NMCA-105, ¶ 18, 134 N.M. 277, 75 P.3d 877 (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999), ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553).

**{24}** A prima facie case of retaliation under the ADA requires a plaintiff to prove the following elements: (1) the plaintiff engaged in a protected activity; (2) the plaintiff was subjected to an "adverse employment action subsequent to or contemporaneous with the protected activity"; and (3) "there was a causal connection between the protected activity and the adverse action." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001); *see also* UJI 13-2307 NMRA (Human Rights Act violation) ("An employer violates the Human Rights Act if it engages in any form of retaliation against any person who has opposed any unlawful discriminatory practice."). With respect to the first element, "to prosecute an ADA retaliation claim, a plaintiff need not show that she suffers from an actual disability. Instead, a reasonable, good faith belief *that the statute has been violated* suffices." *Selenke*, 248 F.3d at 1264 (emphasis added). In other words, even if an ADA plaintiff is not actually disabled, a reasonable, good-faith belief on the part of the plaintiff that he or she has engaged in activity protected by the statute will suffice.

**C.     The District Court Did Not Err by Denying Outback's Renewed Motion for Judgment as a Matter of Law**

**1.     Standard of Review**

**{25}** We review the district court's denial of a renewed motion for judgment as a matter of law under Rule 1-050(B) de novo, resolving all conflicts in the evidence in the nonmoving party's favor. *Williams v. Mann*, 2017-NMCA-012, ¶ 25, 388 P.3d 295. To the extent that Outback challenges evidentiary rulings that are relevant to its argument that it is entitled to judgment as a matter of law with respect to Plaintiff's NMHRA retaliation claim, we review evidentiary rulings for an abuse of discretion. *See Lewis v. Albuquerque Pub. Sch.*, 2018-NMCA-049, ¶ 32, 424 P.3d 643 ("With respect to the admission or exclusion of evidence, we generally apply an abuse of discretion standard when the application of an evidentiary rule involves an exercise of discretion or judgment[.]") (alteration, internal quotation marks, and citation omitted).

**{26}** Despite Outback's framing of this argument strictly as a matter of law requiring de novo review of the district court's interpretation of the NMHRA, our review here necessarily entails the jury's findings of fact in light of the jury instructions given at trial

because as Outback argues, "[t]his issue . . . [asks] whether [Plaintiff] presented evidence to support a necessary element of his [NMHRA] retaliation claim." We review jury verdicts deferentially because "[a]ppellate reversal of jury verdicts must be done cautiously and only under a strict standard of review in order to safeguard a litigant's constitutional right to a jury trial. For this reason a standard of review was designed to resolve all doubts in favor of the jury verdict." *Gonzales v. Sansoy*, 1984-NMSC-098, ¶ 5, 102 N.M. 136, 692 P.2d 522 (citation omitted). *See Baxter v. Gannaway*, 1991-NMCA-120, ¶ 11, 113 N.M. 45, 822 P.2d 1128 ("[T]he appellate court should strive to uphold the decisions of the fact[-]finder.").

**{27}** "Generally, an appellate court may affirm a trial court ruling on a ground not relied on below if reliance on the new ground would not be unfair to the appellant." *Atherton v. Gopin*, 2015-NMCA-003, ¶ 36, 340 P.3d 630. Although in doing so we may not "assume the role of the [district] court and delve into fact-dependent inquiries[,] . . . we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." *Id.* (alteration, internal quotation marks, and citation omitted).

## 2. Plaintiff Established That Outback Regarded Him As Physically Handicapped Under the NMHRA

**{28}** In the NMHRA's terms, Outback could not have committed an unlawful discriminatory practice if Outback did not regard Plaintiff to be physically handicapped at the time he complained to Jolly, because then Plaintiff's complaint to Jolly was not protected by the NMHRA. *See* § 28-1-2(M) ("A person is also considered to be physically or mentally handicapped if the person has a record of a physical or mental handicap *or is regarded as* having a physical or mental handicap." (emphasis added)); § 28-1-7(I)(2) (defining an unlawful discriminatory practice as an employer "engag[ing] in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice."). Because of the absence of medical evidence apart from Plaintiff's testimony regarding his injuries, York's testimony at trial is crucial to our determination that Outback regarded Plaintiff to be physically handicapped under the NMHRA. Referring to the time-frame immediately after Plaintiff was injured, Plaintiff's counsel questioned York:

> Plaintiff's counsel:  So you saw [Plaintiff] in crutches, he's telling you he can't work, he's got records of physical injury, you regarded him as being disabled, didn't you?
>
> Mr. York:  Disabled?
>
> Plaintiff's counsel:  Yeah.
>
> Mr. York:  I would say a sprained ankle is a disability.

But York's testimony that he believed Plaintiff to be disabled does not end our analysis. For Plaintiff to prevail on his NMHRA retaliation claim on the theory that Outback terminated Plaintiff because Outback regarded him to be physically handicapped, he needed to establish that Outback, through its employees, including York, believed, even if mistakenly, that Plaintiff's ankle injury substantially limited one or more of his major life activities. *See Lusk*, 238 F.3d at 1241 (stating employer regards employee to be disabled if it "(1) . . . mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) . . . mistakenly believes that the person's actual, non-limiting impairment substantially limits one or more major life activities."). The major life activities implicated here are walking, working, and possibly performing manual tasks. *See* § 28-1-2(N) (defining "major life activities" under the NMHRA).

**{29}** In addition to York's testimony, Plaintiff testified that when he requested an accommodation from York, he could still walk, but not well enough to be a server. Plaintiff also testified that he asked his father to fix a pipe inside the restaurant since he told York before he was injured that he would fix it, and York was upset that he had not fixed the pipe. A reasonable inference from that testimony was that Plaintiff's mobility was impaired, and also that he was not capable of fixing the pipe due to his injury, and thus possibly could not perform manual tasks. However, Plaintiff's suggested accommodations of expediting work and prep work indicated that he felt he could work, stand, and walk to some degree. Given that Plaintiff clearly felt he could work a prep shift, which required walking and standing for eight hours, and communicated the same to York, York's refusal to accommodate Plaintiff with server, expediting, or prep shifts because he did not believe that Plaintiff could perform that work in his condition is indicative of his belief, even if mistaken, that Plaintiff was substantially limited in one or more of his major life activities.

**{30}** To reiterate, the record indicates that York was mistaken for three reasons. First, Plaintiff told York he could work a prep shift, which would have required walking and standing for eight hours. In the absence of any medical evidence or testimony, which the district court ensured when it barred that evidence in its ruling on Outback's motion in limine, Plaintiff's testimony that he felt he could have worked the prep shift is evidence that York was mistaken.

**{31}** Second, Plaintiff's physician's notes, which Plaintiff gave to York following his injury, did not reflect that Plaintiff was physically limited other than being unable to work during a specified date range. There was a section in each note called "Restrictions" in which the physician could have checked a box next to certain restrictions such as Plaintiff's ability to lift, bend, and twist, and whether Plaintiff should not bear weight on his legs, should avoid standing and walking for more than a certain number of hours, or needed crutches, among other restrictions. None of those boxes was checked. In fact, there were no details on the notes other than that Plaintiff could not work during a specified date range.

**{32}** Finally, York testified that he believed "a sprained ankle is a disability." Again, under the NMHRA, Plaintiff was "considered to be physically or mentally handicapped if . . . [he was] regarded as having a physical or mental handicap[.]" Section 28-1-2(M). York was Plaintiff's supervisor at Outback, and thus York's perspective as to whether Plaintiff had a physical or mental handicap that substantially limited one or more of his major life activities is indicative of whether Outback regarded Plaintiff to be physically handicapped or disabled since York felt that Plaintiff could not perform a major life activity, working, because of his injury. Because evidence in the record supports a determination that York mistakenly believed that Plaintiff's injury substantially limited his major life activity of working, we conclude that Outback regarded Plaintiff to be disabled.

**{33}** Outback is incorrect that the relevant inquiry here is whether Plaintiff had a reasonably objective, good-faith belief that Outback regarded him to be disabled. On a retaliation claim, for a plaintiff to proceed on the theory that an employer *regarded* an employee to be disabled and discriminated against him or her because of it, and then terminated an employee because he or she opposed that discrimination, it is irrelevant what the *employee* believed the *employer* thought about his condition. The employee's good-faith belief that his employer has violated the relevant statute, in this case the NMHRA, and whether the employer regarded that employee to be disabled, are the relevant inquiries. *See id.* § 28-1-2(M) ("A person is . . . considered to be physically . . . handicapped if the person . . . is regarded as having a physical  . . . handicap[.]"); *Selenke*, 248 F.3d at 1264 (stating an employee need not prove he or she "suffers from an actual disability" to prove an ADA retaliation claim, but the employee does need to show that he or she had "a reasonable, good[-]faith belief that the statute has been violated"). If an employer takes adverse employment action because it mistakenly believes the employee's impairment is actually more limiting than it is, or alternatively mistakenly believes the employee is suffering from a substantially limiting impairment when the employee is not impaired at all, that belief and ensuing action based upon it combines to amount to an unlawful discriminatory practice because the *employer* is taking action based on *its mistaken perception* that the employee is disabled. *See Lusk*, 238 F.3d at 1241 (applying the ADA to an employer's mistaken belief concerning impairment).

**{34}** Notwithstanding the foregoing, Plaintiff still had to have a good faith, objectively reasonable belief that Outback violated the NMHRA, as opposed to a good faith, objectively reasonable belief that Outback regarded him to be disabled, which is what Outback argues. *See Selenke*, 248 F.3d at 1264 (stating showing necessary for ADA retaliation claim). Here, the record indicates that Plaintiff had such a belief. Plaintiff reported to Jolly that York tried to convince him not to file a worker's compensation claim, and when that effort failed, York gave him telephone numbers that were purportedly for Outback's worker's compensation insurer, but were actually for a Wells Fargo bank. Plaintiff also told Jolly about York's pressure on him to find coverage for the shifts of work that he was missing or "man up and work." Additionally, Plaintiff told Jolly that York told him, "If you want to manage for me, you will show up no matter what."

**{35}** Plaintiff testified that by February 12, 2012, which was approximately six weeks after his injury, his worker's compensation claim had "finally" been approved and his Magnetic Resonance Imaging scan was scheduled for February 15. However, two days later, Jolly called Plaintiff to terminate his employment. According to Plaintiff, Jolly told him that the decision to terminate him was York's, and "each store handles how they— each store treats [w]orkers' [c]ompensation differently. It depends on the individual proprietor, and it was his decision alone to terminate me." However, Plaintiff also testified that Jolly told him that York terminated him "because I hadn't worked in [thirty] days, and it's his policy to remove in the [thirty] days." For her part, Jolly testified that Plaintiff told her that he was concerned "that his [w]orker's [c]omp[ensation] injury had been reported on the wrong date, and that he didn't like the tone of some text messages." The record shows that Plaintiff had a good faith, objectively reasonable belief that Outback violated the NMHRA by terminating him because it regarded him as having a physical handicap. Additionally, although no New Mexico case has decided whether the determination of an impairment as a serious medical condition is a question of law or fact, the Tenth Circuit has decided that "[w]hether the plaintiff has an impairment within the meaning of the ADA" and "[w]hether the conduct affected is a major life activity for purposes of the Act is also a legal question for the court." *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003); *see also* Rule 13-2307G NMRA, comm. cmt. (recognizing the Tenth Circuit's holding in *Doebele*). We therefore affirm the district court's judgment and denial of Outback's renewed motion for judgment as a matter of law, but because we do so on grounds that the district court did not rely upon,[2] we affirm the judgment and denial under the right for any reason doctrine. *See Atherton*, 2015-NMCA-003, ¶ 36 (stating that we may affirm the district court as right for any reason if doing so would not be unfair to the appellant and if it would not require us to look beyond factual allegations considered below).

**D.    The District Court's Inconsistent Rulings Do Not Warrant Reversal Because Outback Either Acquiesced or Waived Objections to the Jury Instructions and Special Verdict Form**

**{36}** On appeal, Outback argues that the district court's inconsistent rulings during and following trial, especially its mistaken belief that the jury found that Plaintiff had a serious physical injury, prejudiced it such that we must order a new trial. Specifically, Outback contends that the district court's pretrial ruling on Outback's motion in limine

---

2Because the district court's reasons for denying Outback's renewed motion for judgment as a matter of law were flawed, we do not rely upon them, even though we affirm the district court's denial as right for any reason. By the time it heard Outback's renewed motion for judgment as a matter of law, it had changed its position and concluded that the evidence showed that Plaintiff had a serious medical condition because of its inaccurate memory of evidence that Plaintiff notified Outback of his surgery pre-termination (it was actually post-termination). Additionally, the district court erroneously concluded that the jury found that Plaintiff had a serious medical condition simply because Plaintiff argued his NMHRA retaliation claim on the basis of his worker's compensation claim. The jury made no such finding because the special verdict form did not allow the jury to identify the unlawful discriminatory practice that Plaintiff opposed and for which Outback retaliated against him. The mere existence of a worker's compensation claim is not probative of the severity of the worker's injury. *See* NMSA 1978, § 52-1-9 (1973) (stating worker has right to compensation provided for in Workers' Compensation Act for "any personal injury accidentally sustained").

concluding that Plaintiff did not have a physical handicap or serious medical condition under the NMHRA and the district court's directed verdict during trial dismissing Plaintiff's NMHRA claims that were premised upon discrimination and failure to accommodate were inconsistent with the district court's denial of Outback's renewed motion for judgment as a matter of law in part because Plaintiff had a serious injury and was retaliated against because of it. Plaintiff answers that Outback's new trial request was not preserved,[3] that Outback invited any error because of its motion in limine, and that the district court's reliance on its conclusion that Plaintiff had a serious medical condition in denying Outback's renewed motion for judgment as a matter of law does not warrant reversal because whether Plaintiff had a serious medical condition was not an element of his NMHRA retaliation claim.

**{37}** While we agree to some degree that the district court's rulings were inconsistent, Outback is not entitled to a new trial because Outback either acquiesced to or waived its objection to the jury instructions or special verdict form, and indeed does not raise claims of error with respect to them on appeal. We focus our analysis on Outback's waiver of objections and acquiescence to the general-in-nature jury instructions and special verdict form because they comprise the law of the case. *See Estate of Saenz*, 2018-NMSC-032, ¶ 40 ("[U]nchallenged jury instructions are therefore the law of the case."); *Muncey*, 2012-NMCA-120, ¶ 21 (stating that "[j]ury instructions become the law of the case" for the purpose of evaluating sufficiency of the evidence); *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 43, 146 N.M. 853, 215 P.3d 791 (same).

**{38}** With respect to Plaintiff's NMHRA retaliation claim, the jury was instructed that "[a]n employer violates the [NMHRA] if it . . . engages in any form of threat, retaliation, or discrimination against any person who has opposed an unlawful discriminatory practice." The district court stated its intention to not permit Plaintiff's NMHRA claim on the basis of discrimination based on physical handicap, and yet a general statement that discrimination is a basis upon which Outback may have violated the NMHRA remained in the jury instruction. Outback argued that it was problematic that the jury

---

[3] Outback argued during the hearing on its renewed motion for judgment as a matter of law that filing a Workers' Compensation claim "does not always involve a disability[,]" which prompted the district court's conclusion "that the evidence is that this did turn out to be a serious medical condition." The district court then asked, even though it did not allow Plaintiff's retaliation claim to go forward on the basis of discrimination, whether there was "substantial evidence upon which the jury can rely on to say that he was discriminated [against because he filed] a Workers' Comp[ensation] claim that was related to a serious medical condition?" We agree with Outback's argument on appeal that its counsel during the hearing attempted to inform the district court that it was making inconsistent rulings, since Outback's counsel argued during the hearing that "the reason that you dismissed the failure to accommodate claim itself was you found at the time that all this was going on, that the time that he was communicating to Outback, that the injury had not yet progressed to the point where it was, in fact, a disability." Thus, Outback preserved this issue for review on appeal. *See Lasen, Inc. v. Tadjikov*, 2020-NMCA-006, 456 P.3d 1090 ("The primary purposes for the preservation rule are: (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the district court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue.") (alteration, internal quotation marks, and citation omitted).

was not "given a standard for how they decide whether the retaliation has occurred" in the jury instruction and stated that the jury should be "told what the protected opposition activity is." The district court then suggested to Outback that it submit a jury instruction defining the protected activity. There is no indication in the record that Outback actually submitted such an instruction, and such an instruction was ultimately not given to the jury.

**{39}** The special verdict form asked the jury only *whether* Outback "violate[d] the [NMHRA,]" but did not ask the jury to specify *how* Outback violated the NMHRA. Outback twice objected to the special verdict form, but its first objection is not relevant to this appeal.[4] Outback also argued that "if the jury makes a finding that Outback violated the [NMHRA], the appellate court will not know whether it was based on protected activity involving the worker['s] comp[ensation] claim, or protected activity involving things that fall within the four corners of the act. It might be worth asking two subsets or sub questions there." However, Outback withdrew its objection to the special verdict form, claiming later at the hearing on the renewed motion for judgment as a matter of law that it withdrew its objection because it believed there was just one basis for the NMHRA retaliation claim, which was Plaintiff's worker's compensation claim.

**{40}** Outback's failure to submit an alternative NMHRA retaliation jury instruction and Outback's decision to allow the jury to be instructed with the general-in-nature jury instruction constitutes waiver of any objection to it, or alternatively acquiescence to the same. *See Pittard v. Four Seasons Motor Inn, Inc.*, 1984-NMCA-044, ¶ 24, 101 N.M. 723, 688 P.2d 333 (concluding plaintiffs waived their right to challenge a jury instruction on appeal when their submitted jury instruction did not accurately reflect the law). *Cf.* Rule 1-051(B) NMRA ("The court shall instruct the jury regarding the law applicable to the facts in the cause unless such instructions be waived by the parties."); Rule 1-051(I) ("For the preservation of any error in the charge, objection must be made to any instruction given . . . or, in case of a failure to instruct on any point of law, a correct instruction must be tendered, before retirement of the jury."); *Estate of Saenz*, 2018-NMSC-032, ¶ 23 ("As a general rule, the right to object to an improper verdict is waived when not made at the time of the return of the verdict and cannot be reclaimed and revived by resorting to a motion for a new trial or on appeal." (internal quotation marks and citation omitted)). Similarly, Outback's withdrawal of its objection to the special verdict form indicated its agreement. Outback cannot now challenge the jury's verdict that it violated the NMHRA when it failed to object to overly general or flawed jury instructions. Regardless of the district court's inconsistent rulings about whether Plaintiff had a serious medical condition, Outback was aware that the jury received a flawed NMHRA retaliation instruction, and Outback acquiesced to a special verdict form that did not ask the jury to specify how Outback violated the NMHRA. Further, although the

---

[4]Outback argued in its first objection to the special verdict form that "the jury should first have to decide the statutory [NMHRA retaliation] claim before moving to the retaliatory discharge claim." Ultimately the parties agreed that the jury would be asked to decide liability with respect to both retaliatory discharge and the NMHRA retaliation claim, and that there would be another instruction in the special verdict form telling the jury that if it "found in favor of Plaintiff . . . regarding statutory [NMHRA] retaliation, then you may answer . . . regarding the award of punitive damages."

district court erroneously concluded that the jury found that Plaintiff had a serious medical condition, in light of our conclusion that, as a matter of law, Outback regarded Plaintiff to be disabled and that Plaintiff had a good faith, reasonable belief that Outback violated the NMHRA, the district court's inconsistent ruling on that topic did not impact the outcome.

> We have previously warned:
>
> [W]e are not prepared to second-guess or override the jury. It is up to the parties to carefully try their cases, to assure that the jury is clearly and carefully instructed, to make critical objections in regard to instructions, and to carry the burden of persuasion through convincing evidence and argument. It is not the duty of an appellate court to sift through the testimony and other evidence and attempt to decide the case based on instructions with which the parties found no material fault.

*Muncey*, 2012-NMCA-120, ¶ 48. That warning remains true today. We decline to reverse the jury verdict and order a new trial.

## CONCLUSION

**{41}** For these reasons, we affirm the jury verdict in Plaintiff's favor with respect to his NMHRA retaliation claim and the district court's denial of Outback's renewed motion for judgment as a matter of law.

**{42}   IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JAMES J. WECHSLER, Judge Pro Tempore**