This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39035**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**STEVEN WALKER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Daniel Ramczyk, District Judge**

Hector H. Balderas, Attorney General
Benjamin Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**YOHALEM, Judge.**

**{1}** Defendant Steven Randall Walker was convicted of aggravated battery (deadly weapon) and (great bodily harm), contrary to NMSA 1978, Section 30-3-5(C) (1969), and aggravated assault with a deadly weapon, contrary to NMSA 1978, Section 30-3-2(A) (1963). On appeal, Defendant claims (1) that there was insufficient evidence that he had the necessary intent to convict him of either aggravated battery or aggravated assault, and (2) that the district court erred in denying his request for a jury instruction on what he claims is the lesser included offense of endangering another with the negligent use of a firearm, contrary to NMSA 1978, § 30-7-4(A)(3) (1993). Although we

conclude that the evidence was sufficient to convict Defendant of both aggravated assault and aggravated battery, we also conclude that Defendant was entitled to a jury instruction on endangering another with the negligent use of firearm, contrary to Section 30-7-4(A)(3). We therefore reverse and remand for a new trial.

## BACKGROUND

**{2}** Shortly after midnight on February 4, 2018, Defendant was loitering in a convenience store parking lot. Security guards Ezekiel Florez and Racheal Esquibel confronted Defendant and asked him to leave the premises after he was observed taunting customers. Rather than leaving, Defendant walked toward a dark alleyway behind the store, apparently intending to circle around to the store entrance. The guards approached within approximately five feet of Defendant, and asked him to leave the premises. When Defendant tried to push past them, Esquibel told Defendant she would pepper-spray him if he tried to push past them again. When Defendant again attempted to push by the guards, Esquibel pepper-sprayed Defendant in his eyes. The evidence at trial showed that pepper spray sprayed into the eyes causes extreme pain and blurs vision. Defendant took two or three steps backward, with his left arm across his eyes. With his right hand, he drew a handgun from his waistband, racked or chambered a round and fired at least one shot, which grazed Florez. Esquibel was unhurt. While neither guard observed where Defendant's gun was pointed at the exact moment he fired, Florez testified he observed Defendant aiming the gun in his direction moments before he fired. A crime scene investigator searching the area that night in the dark found a single shell casing. The investigator found no marks indicating that a bullet had been fired into the dirt or had ricocheted.

**{3}** Defendant admitted to the police, who located him shortly after this incident, that he had fired his gun but told the police he had reacted to being blinded and in pain by pulling his gun and firing into the ground, and that he did not intend to fire in the direction of the guards or to injure them.

## DISCUSSION

**{4}** Defendant raises two claims on appeal: he alleges first that the evidence at trial was insufficient to establish the intent element of either aggravated assault or aggravated battery and, second, that the district court committed reversible error when it refused to instruct the jury on negligent use of a firearm, an offense, which Defendant contends is a lesser included offense of both aggravated assault and aggravated battery, as described in the charging document and in the evidence at trial. We address each issue in turn.

## I. The Evidence Was Sufficient to Convict Defendant of Aggravated Battery and Aggravated Assault

**{5}** We address first Defendant's claim that the evidence of intent was insufficient to support his conviction of either aggravated battery or aggravated assault.

**{6}** When reviewing for sufficiency of the evidence, we consider "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. Our task in evaluating the sufficiency of the evidence is not to determine whether there is evidence to support Defendant's claim that he should have been found innocent but rather to determine whether there is substantial evidence to support the jury's finding of guilt. *See id.* "The fact[-]finder may reject [the] defendant's version of the incident." *Id.* We will not disturb credibility determinations made by the fact-finder. *See State v. Romero*, 2019-NMSC-007, ¶ 5, 435 P.3d 1231 (holding that because the fact-finder in the trial court is in a better position than an appellate court to assess demeanor and credibility, on matters of credibility "we will not replace the [fact-finder]'s judgment with our own.") So long as "a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction," we must defer to the jury's findings and affirm. *State v. Vigil*, 2010-NMSC-003, ¶ 4, 147 N.M. 537, 226 P.3d 636 (internal quotation marks and citation omitted).

**{7}** Defendant does not dispute that he fired the shot that grazed Florez and passed close to Esquibel. His claim that the evidence was insufficient to support his convictions of aggravated assault and aggravated battery is focused solely on evidence of intent. Aggravated assault requires proof of general criminal intent: "a mental state of conscious wrongdoing, rather than merely engaging in an intentional act." *State v. Young*, 2021-NMCA-049, ¶ 21, 495 P.3d 1189 (alteration, internal quotation marks, and citation omitted). Aggravated battery, on the other hand, requires specific intent to injure the victim or another. *State v. Fuentes*, 1994-NMCA-158, ¶ 8, 119 N.M. 104, 888 P.2d 986. Circumstantial evidence can be sufficient to support a finding of intent. *See State v. Lopez*, 2011-NMCA-071, ¶ 6, 150 N.M. 34, 256 P.3d 977.

**{8}** We measure the sufficiency of the evidence against the law as stated in the jury instructions. *Goodman v. OS Rest. Servs., LLC*, 2020-NMCA-019, ¶ 16, 461 P.3d 906 ("[J]ury instructions become the law of the case against which sufficiency of the evidence is to be measured." (internal quotation marks and citation omitted)). In this case, the jury was instructed that to convict of aggravated assault, they must find that Defendant "shot a firearm at . . . Esquibel." The jury was instructed that to convict Defendant of aggravated battery, it must find that "[D]efendant intended to injure . . . Florez or another."

**{9}** Defendant's brief on appeal focuses exclusively on the evidence supporting his defense to both offenses—his claim that he fired into the ground with no intent to either fire at or in the direction of the two guards and without intent to injure either guard. While such evidence may have provided an adequate basis for an acquittal (had the jury found that evidence credible), our inquiry is not whether the record *could have* supported an acquittal that did not occur but rather whether the record is adequate to support the verdict of guilt that *did* occur.

**{10}**  With that inquiry in mind, it is readily apparent that the jury's verdict has adequate support in the record. Although Defendant claimed he was blinded by pepper spray and confused by pain, the jury could have inferred from his ability to find his gun in his waistband, prepare it for firing, and fire it that his testimony was not credible. Moreover, even if Defendant was blinded and confused at the time he fired, the evidence supports a reasonable inference that he was generally aware of where the two guards were standing, only five feet directly in front of him. Indeed, Florez testified that he saw Defendant aim the gun at him, not at the ground, a few seconds before a shot grazed his head. Moreover, the crime scene investigator testified that she found no evidence that a bullet aimed elsewhere had ricocheted and hit Florez. The testimony that Defendant had been involved in a confrontation with the guards, physically attempting to push past them immediately before Defendant shot Florez, also supports the jury's finding that Defendant acted intentionally. The evidence was thus sufficient to support Defendant's convictions.

## II. The Trial Court Erred in Denying Defendant's Request for an Instruction on Negligent Use of a Firearm

### A. Preservation for Appeal

**{11}**  We consider first whether Defendant's argument regarding his requested jury instruction was properly preserved for our review. The State argues that the correct written instructions were not provided and the issue was thus not "fairly invoked" for preservation purposes. Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). Rule 5-608(D) NMRA provides that "[i]n case of failure to instruct on any issue, a correct written instruction must be tendered before the jury is instructed," and that "[b]efore the jury is instructed, reasonable opportunity shall be afforded counsel so to object or tender instructions, on the record and in the presence of the court." Our Supreme Court has explained that the purpose of Rule 5-608 is to alert the trial court to the requested instruction so that the court can properly provide a ruling. *See State v. Jernigan*, 2006-NMSC-003, ¶ 10, 139 N.M. 1, 127 P.3d 537. If the record shows the trial court understood what instruction was being requested and how the uniform jury instruction should be modified, if at all, to correctly state the law for the jury, then the issue is deemed preserved. *See id.*

**{12}**  Defendant claims that defense counsel tendered his proposed jury instruction, UJI 14-703 NMRA, to both the State and the district court, and that the proposed instruction must have been misplaced after the trial if it is not in the record. The record supports Defendant's claim: at trial, the parties and judge engaged in a colloquy about whether Defendant was entitled to such a jury instruction, during which the court commented that "reasonable inference could be drawn that [Defendant's criminal act constituted] negligent use [of a firearm]." This comment indicates that the district court had been presented with the proposed jury instruction, or was at least aware of its substance. The State responded by arguing that negligent use of firearm is not a lesser included offense of either aggravated battery or aggravated assault, making no mention

on the record of Defendant failing to have tendered a proposed jury instruction. The district court's written order similarly addressed Defendant's request for an instruction on its merits, making no mention of Defendant having failed to tender a proposed instruction. The record thus establishes that Defendant adequately raised the issue with the district court and that the State had an opportunity to respond—thus properly preserving the issue for our review.

## B.    Defendant Was Entitled to an Instruction on Negligent Use of a Firearm

{13}    Whether Defendant was entitled to a jury instruction is a "mixed question of law and fact that we review de novo." *State v. Skippings*, 2011-NMSC-021, ¶ 10, 150 N.M. 216, 258 P.3d 1008. In contrast to our standard of review for sufficiency of the evidence, "we view the evidence in the light most favorable to the giving of the requested instruction." *Id.* (internal quotation marks and citation omitted). In applying this standard, we must accept the evidence supporting Defendant's version of the facts and draw all inferences from that evidence in favor of Defendant's claim. *See id.* This standard is applied to protect a defendant's right to present his defense and to obtain a decision from a jury resolving any conflict in the evidence.

{14}    Defendant in this case sought to have the judge instruct the jury on negligent use of a firearm, contrary to Section 30-7-4(A)(3), arguing that under his defense theory, negligent use of a firearm was a lesser included offense of both aggravated assault and aggravated battery. Our Supreme Court has provided guidance in the form of a test for determining whether one crime constitutes a lesser included offense of another. *See State v. Meadors*, 1995-NMSC-073, ¶ 12, 121 N.M. 38, 908 P.2d 731. The test examines the offenses alleged in the charging instrument and the "evidenced adduced at trial." *Id.* ¶¶ 11-12. The three-part test, referred to as a "cognate approach," recognizes an entitlement to an instruction on a lesser included offense when:

> (1) the defendant could not have committed the greater offense in the manner described in the charging document without also committing the lessor offense . . . ; (2) the evidence adduced at trial is sufficient to sustain a conviction on the lesser offense; and (3) the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser.

*Id.* ¶ 12. *Meadors* also includes a strict statutory elements test, which expressly applies to state requests for a lesser included offense instruction. *Id.* This Court has held, however, that it is unnecessary to examine the strict statutory elements of the greater and lesser offense in the context of a defendant's request for a lesser included instruction, because the purpose of a strict elements test is to determine whether the defendant had adequate notice of the lesser included offense when the state requests such an instruction. *See State v. Juan*, 2010-NMSC-041, ¶ 23, 148 N.M. 747, 242 P.3d 314 ("[E]xamining the strict statutory elements of the greater and lesser offenses is 'unnecessary in the context of a defendant's request for a lesser[]included instruction." (internal quotation marks and citation omitted)). For the same reason, when the

defendant's rather than the state's request is at issue, the first element of the cognate approach is analyzed in the context of the facts adduced at trial, rather than focusing on the facts alleged in the charging document. *See State v. Darkis*, 2000-NMCA-085, ¶¶ 15-17, 129 N.M. 547, 10 P.3d 871 (stating that in the context of a defendant's request for a lesser included offense instruction, the court should look both to the charging document and the evidence at trial).

**{15}** In this case, the district court denied Defendant's requested instruction on the basis that negligent use of a firearm is not a lesser included offense of aggravated assault or aggravated battery, under either the strict statutory elements test or the cognate test because neglect is not a lesser included element of an intentional offense. In the briefs on appeal, the state concedes that the first factor of the *Meadors* cognate test was satisfied, arguing solely that the remaining two factors were not met: that the evidence at trial was insufficient to convict Defendant of negligent use of a firearm and that no jury could rationally acquit Defendant of aggravated assault or aggravated battery and convict him of negligent use of a firearm. While we are not required to accept the State's concession on appeal, *State v. French*, 2021-NMCA-052, ¶ 17, 495 P.3d 1198, we accept it here as supported by our precedent. We explain.

**{16}** The elements of Defendant's requested jury instruction on negligent use of a firearm were: (1) endangering the safety of another, (2) by handling or using a firearm or other deadly weapon, and (3) in a negligent manner. Section 30-7-4(A)(3); UJI 14-703. Criminal negligence, the intent required, is defined as "willful disregard of the rights or safety of others and in a manner which endangered any person or property." UJI 14-133 NMRA.

**{17}** The dispute in the district court about whether negligent use of a firearm was a lesser included offense under the cognate approach focused on the element of intent. The district court decided that the intent to shoot at the guards, required for aggravated assault, and the intent to injure them, required for aggravated battery, was mutually exclusive of the "willful disregard of the rights or safety of others and in a manner which endangered any person or property," required to convict of negligent use of a firearm. UJI 14-133. In other words, the district court concluded that criminal negligence is not a "lesser included" mental state of criminal intent under the *Meadors* cognate approach.

**{18}** *State v. Montoya*, however, undercuts that proposition. 2015-NMSC-010, 345 P.3d 1056. *Montoya* held that "intentional and reckless conduct are 'mutually exclusive,'" explaining, in the context of child abuse, that "one cannot intentionally commit child abuse without consciously disregarding a substantial and unjustifiable risk." *Id.* ¶ 41 (alternation, internal quotation marks, and citation omitted). That underlying concept applies in equal force in the context of this case: Defendant could not have shot at and intentionally injured the security guards without Defendant also having "willful[ly] disregard[ed] the rights or safety of others and [acted] in a manner which endangered any person or property," the definition of criminal negligence. UJI 14-133. This construction of the intent requirements is consistent with this Court's recent holding in *Young* that in cases where an alleged battery or assault involves the use of a

firearm, negligent use of a firearm can be a lesser included offense that must be charged if requested by a defendant. 2021-NMCA-049, ¶ 20-29. We therefore conclude that the first element of the *Meadors* cognate test is met.

**{19}**   The second *Meadors* element is also met: there is evidence sufficient, if credited by the jury, to establish all of the elements of negligent use of a firearm. Defendant conceded that he discharged a firearm, in an environment with poor lighting, where a bullet could ricochet, and in close proximity to two other people he knew were only a few feet away. The uncontested evidence thus establishes that at a minimum, Defendant acted in a manner: which (1) endangered the safety of another, (2) by handling or using a firearm or other deadly weapon, and (3) did so with willful disregard of the safety of others.

**{20}**   Finally, turning to the third and final *Meadors* element, we examine whether the record establishes that a jury could rationally have acquitted Defendant on aggravated assault and aggravated battery, but convicted him of negligent use of a firearm. In so doing, we apply the strong preference for giving a lesser included offense instruction requested by a defendant, as required by precedent, *see Skippings*, 2011-NMSC-021, ¶ 10, and thus draw all inferences in favor of Defendant's argument that he acted negligently but not intentionally. Defendant had told the police immediately after the shooting that he did not fire the gun either aiming at the security guards or intending to injure them, but that in his pain and blindness from having just been sprayed in the eyes with pepper spray, he reached for his gun and fired a shot into the ground. The jury could reasonably have inferred that the single shot Defendant admitted to firing ricocheted, hitting Florez, or that Defendant intended to fire into the ground, and fired instead in Florez's direction out of confusion and pain. The fact that the jury did not do so does not mean that it could not have reasonably done so. We therefore conclude that the third and final element of *Meadors* test is satisfied.

**{21}**   Defendant's request for jury instruction on negligent use of a firearm should have been granted.

**CONCLUSION**

**{22}**   Because failure to give the jury a requested instruction on a lesser included offense when the instruction is supported by the evidence is not harmless error, *see Jernigan*, 2006-NMSC-003, ¶ 21, we reverse and remand for a new trial where the jury is correctly instructed on negligent use of a firearm.

**{23}   IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**